HATCHER v. STATE.

Division A.   Feb. 5, 1951.

No. 37732 (50 So. (2d) 387)

**H. C. Watkins,** and **Parker & Williamson,** for appellant.

**Joe T. Patterson,** Assistant Attorney General, for appellee.

**Lee, J.**

Mrs. Elsie Hatcher was jointly indicted with her husband, Prentiss L. Hatcher, for an assault and battery with intent to kill and murder Ronald C. Gough. Her motion for severance was granted. On the trial, the jury found her guilty as charged, and the court sentenced her to serve a term of six years in the state penitentiary.

Appellant's husband and a son had been working for the City of Meridian for several years. The injured party, Gough, as superintendent of public works, had in charge all personnel of the city, except the employees of the water department. On August 15, 1949, at the

instance of Gough, the Hatchers were fired. The assault occurred on September 2nd following.

The issue in this case was well defined, and raised a sharp dispute.

The State's version was that when the appellant brought her husband and son to work, she would remain for considerable periods of time, and interfere with the work; that she was the only woman present, Gough did not like it, thought it improper, and directed a foreman to inform Hatcher that his wife could not continue such course of conduct. In spite of the admonition, the appellant did not desist; and on August 15th, her husband and son were fired. On the morning of the assault, about 8:30, Gough was sitting at his desk preparing the weekly payroll. Suddenly some one grasped his throat and choked him. He saw that his assailant was appellant's husband. Immediately appellant fired a pistol at him, and the bullet struck him in the leg. He tried to defend himself, but was hit by two other bullets in the side and back. Several persons came into the office after hearing the first shot. One testified that both the appellant and her husband had their hands on the pistol when the remaining shots were fired, while two others testified that her husband fired those shots. All agreed that Gough was lying on the floor, face down, when the latter shots were fired. The wounds were serious, and Gough was permanently injured.

The defense offered the following version: Twelve years before, appellant met Gough as she was applying for a WPA job, at which time he made an improper advance toward her. She had not seen him since that time until he came on the job for the city. She admitted that she went to the "barn"—the office in question—often. The latter part of July, Gough approached her for a date. He gave her a piece of paper which, when held to the light, depicted an act of sexual intercourse. She claimed that he followed her car and tried to press his advances. However, even after her husband and son

had been discharged, and after the alleged advances were being made, she continued to go to the office, where she was in Gough's presence. On August 19th, she purchased the pistol with which the wounds were later inflicted. She claimed that, earlier in the morning on the day of the assault, Gough followed her car at a time when her husband was with her, and that her husband called out to Gough that he quit following her car. (All of this was denied by the State.) Following this last incident, she testified that she went home, got the pistol for protection, asked her husband if he wanted to go with her, and proceeded to Gough's office. When they walked in, Gough was sitting at his desk. She had the pistol in her hand and asked Gough why he was following her car and why he had insulted her. To which question he replied, "Anybody says I followed your car is just a ——— lie", and reached in the drawer for his gun. Whereupon she shot him.

Gough denied the appellant's accusations in their entirety; and in those instances where other persons were shown to be present, those persons corroborated Gough, and their evidence was in direct conflict with that of the appellant.

In other words, the State's evidence, if believed, showed a cowardly and unprovoked assault, out of a spirit of malice and revenge, on account of the firing of her husband and son, which arose by reason of her obstinacy in continuing to hang out around the office, and interfere with the employees of the city in the discharge of their duties. On the other hand, the appellant contended that she was being pursued by Gough, and that she went to his office, with a pistol in her hand, in plain view, to demand why he was following her car and insulting her, and that she shot in self-defense because he reached for a pistol in the drawer after denouncing such charges as false.

In the interest of brevity, a detailed statement of the incredible links in the appellant's narrative is not here

recorded. Suffice it to say, sufficient reference has been made to show ample justification on the part of the jury for the complete rejection of her version.

Appellant complains at the refusal of the following instructions:

"The Court instructs the Jury for the defendant that if you believe Gough had been annoying Mrs. Hatcher, then she had a right to go to see Gough to ask him to cease doing so, and if she had good reason to believe that she needed a pistol to protect herself from harm at the hands of Gough, she had a right to go there armed."

"The Court instructs the Jury for the Defendant that if you believe the defendant went to the barn in question to request the prosecuting witness to quit molesting her and that she had reasonable grounds to believe that Gough would do her great bodily harm she had a right to carry a gun."

Both of these instructions contained the clause "if you believe" instead of "if you believe from the evidence". ▉▉ Issues must be decided in accordance with the law and the evidence. "Verdicts must be based upon the facts of the case, not upon the whims or wishes, the likes or dislikes, of the members of the jury." Yazoo & M. V. R. Co. v. Smith, 82 Miss. 656, 35 So. 168. ▉▉ "In conformity with the general rule, instructions commencing with the words 'if you believe', should contain also the words 'from the evidence', although the omission of the entire phrase does not render erroneous an instruction based upon undisputed or admitted facts." 53 Am. Jur., Trial, Sec. 668, p. 515. This question has been dealt with by this Court heretofore. After criticizing one feature of the instruction there in question, this Court, in Gordon v. State, 95 Miss. 543, 49 So. 609, said: "But, worse than this, it charges that they may find the defendant guilty if they simply believe so and so. *They are not required to believe from the evidence.*" (Emphasis supplied.) Besides, on one of these instructions is the notation, "requested during opening argu-

ment of the State''. ██ ██ ''A requirement that requested instructions be presented to the court in writing before argument is made to the jury is a reasonable one, and a party cannot claim the right to disregard it.'' 53 Am. Jur., Trial, Sec. 520, p. 420. Such course is more conducive to the true administration of justice. It affords the trial judge an opportunity to consider all instructions together, and does not make him appear as a partisan by giving instructions while the arguments are under way. For the reasons assigned above, these instructions were properly refused.

The instructions for the State were correct. Word v. State, 180 Miss. 883, 178 So. 821. The indictment charged an assault and battery with intent to kill and murder. Requisites of an indictment for murder are found in Section 2454, Code of 1942, and a description of the offense is found in Section 2215, Code of 1942. ██ ██ The only difference between murder and an assault and battery with intent to kill and murder is in degree—the homicide occurs in the former but is not consummated in the latter. ██ ██ The instructions for the State were complete within themselves, and the two refused instructions were not necessary complements.

But aside from these instructions, the State neither requested nor was given any instruction which cut off the right of self-defense, whereas the appellant was given a number of instructions which fully covered such plea. Among other things, the jury was instructed that unless the State had proved beyond reasonable doubt ''that the defendant, Mrs. Hatcher, shot Gough intending at the time to kill him when she did not reasonably believe that she was in danger of great bodily harm at the hands of Gough'', it was their duty to acquit her; and unless also by like proof ''that the defendant shot Gough deliberately with the intention of unlawfully slaying him, when she did not reasonably believe that she was in danger of serious bodily harm'', they must acquit her; and also, ''if . . . you have a reasonable doubt as

to whether the defendant only used the pistol under the reasonable belief that she was defending herself from great bodily harm", they must acquit her; and also "if the jury believe from the evidence or have a reasonable doubt from the same that the defendant was assaulted by Mr. Gough in such a way as to induce in the defendant a reasonable belief that she was in danger of suffering great bodily harm, then she was justified in defending herself even to the extent of taking the life of her assailant although the danger was not real but only apparent."

From what has been said, it will be seen that these views in nowise conflict with Pulpus v. State, 82 Miss. 548, 34 So. 2, and Garner v. State, 93 Miss. 843, 47 So. 500.

█ The argument of the district attorney, to which exceptions were taken, was based on the evidence and his construction of the instructions. It was his province to set forth his interpretation of the facts, and to comment as to whether the appellant, in view of her acts and conduct, was in position to ask a jury to acquit her on the ground of self-defense. The argument was strictly within the record, was based on the evidence and the instructions, and was logical and legitimate.

The State made out a strong case. The instructions, taken together, constituted a fair announcement of the law. There is no harmful error in the record. The case must be, and is, affirmed.

Affirmed.