## IN THE SUPREME COURT OF MISSISSIPPI
### NO. 94-KA-00837-SCT

*ROGER B. HARRIS*

*v.*

*STATE OF MISSISSIPPI*

### ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 8/2/94 |
| TRIAL JUDGE: | HON. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | INFORMATION OMITTED |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: MICHAEL C. MOORE |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND RENDERED - 6/12/97 |
| MOTION FOR REHEARING FILED: | 7/3/97 |
| MANDATE ISSUED: | 10/1/98 |

**EN BANC.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. After granting Roger Harris's petition for writ of certiorari, we are asked to address the propriety of Harris's conviction in the Circuit Court of Hinds County on three counts of aggravated assault, which were entered after the trial court granted a directed verdict on charges of deliberate design murder and allowed the prosecution to proceed on the unindicted charge. Upon careful review, this Court is of the opinion that the trial judge erred by allowing the State to go forward with its case after granting Harris a directed verdict on the charges of deliberate design murder. We will therefore reverse and render Harris's conviction for aggravated assault.

### I.

¶2. Roger Harris owned and managed a nightclub called "Club Colours," located on Mill Street in

Jackson, Mississippi. In the early morning hours of November 14, 1993, Harris was crossing Mill Street on foot when a black Jeep Cherokee, driven by Harold Williamson, came toward him. In the Cherokee with Harold were his wife Sarah, his brother, Hosea, and his wife Doris.

¶3. As the Cherokee proceeded north on Mill Street, Harris, feeling that the driver was purposefully trying to injure him, fired at the Cherokee with a .357 magnum handgun. The gunshot hit Doris Williamson in her back. After realizing that Harris's shot had struck his wife, Hosea Williamson then exited the Cherokee and began walking toward Harris. As Hosea walked toward Harris, Harris asked him not to come any closer. Hosea continued toward Harris, and Harris shot him in the leg. Pandemonium ensued.

¶4. Several shots were fired from the Cherokee, which was about a block away from Harris. Harold then spun the Cherokee around in an attempt to go back and pick up the injured Hosea. In the process, the Cherokee hit several vehicles parked in the area, including Harris's Blazer and a car owned by Barry Alexander, who was inside Club Colours. Harris stopped firing his weapon, and Harold Williamson attempted to get Hosea into the Cherokee.

¶5. After realizing that his vehicle had been hit by the Cherokee, Alexander ran out of the nightclub, went to the trunk of his car, retrieved an AK-47 assault rifle, and opened fire in the direction of the Cherokee, shooting continuously as the Cherokee drove away. Doug Williams, another patron of Club Colours, also rushed outside and began firing a nine-millimeter handgun at the Cherokee, which eventually came to a stop at the corner of the block.

¶6. In the aftermath of the shootout, Doris, Harold, and Hosea Williamson died of gunshot wounds inflicted by a high-velocity weapon or weapons. Sarah Williamson was not injured. A Hinds County grand jury indicted Harris, Alexander, and Williams on three charges of deliberate design murder under § 97-3-19 of the Mississippi Code. The circuit court granted Harris's motion for severance, and his trial occurred on July 26, 1994.

¶7. At the trial, Dr. Rodrigo Galvez, expert for the State, testified that Doris, Harold, and Hosea Williamson were killed by a high-velocity weapon. The proof at trial, however, showed that Harris had fired a .357 magnum, which is not considered a high-velocity weapon. At the close of the State's case, Harris moved for a directed verdict based on a lack of evidence that he had caused the victims' deaths. The trial judge granted the directed verdict, but, over objection by the defense, the trial judge allowed the State to proceed on three counts of aggravated assault. Even though the aggravated assault charge was not included on the indictment, the trial judge reasoned that the aggravated assault charge was a lesser included offense of the deliberate design murder charge. The jury eventually convicted Harris of the three counts of aggravated assault and the judge sentenced him to three consecutive twenty-year prison sentences. The Court of Appeals affirmed the conviction, and we granted Harris's petition for writ of certiorari.

## II.

¶8. Harris contends that after the trial court granted him a directed verdict of acquittal on deliberate design murder, the State should not have been allowed to proceed on the theory that aggravated assault was a lesser included offense of deliberate design murder. We agree.

¶9. A trial court determination of insufficiency leading to a directed verdict of acquittal on the charge in the indictment summarily concludes the State's case on that charge. If the State has made no other charges within the indictment, then the State is precluded from trying the defendant on a lesser included offense. It is well-settled that a court-directed verdict to the jury to find the defendant not guilty has the same effect as a jury-deliberated verdict of not guilty. *McGraw v. State*, 688 So. 2d 764, 767 (Miss. 1997). It follows, then, that a directed verdict on an indictment for murder is a bar to trying the defendant on aggravated assault, since he had not been indicted for the offense of aggravated assault.

¶10. The State argues in its brief to this Court that the authority of the trial judge to grant a directed verdict on one or more of the offenses charged allows a judge to grant a directed verdict specifically on the charge for which the defendant is being tried, but not necessarily the lesser included offenses of that charge. On the other hand, the defense basically argues that there is no difference between a judge's directed verdict and a jury's verdict of acquittal.

¶11. One essential distinction between the directed verdict and the jury verdict is that the jury has the option to return a verdict of guilty on a lesser and included offense, while the trial judge's directed verdict of acquittal can only be on the charge contained in the indictment. *See State ex rel Robinson v. Blackburn*, 367 So. 2d 360, 362-63 (La. 1979). The State would argue that this difference means that a judge's directed verdict of acquittal of deliberate design murder is "limited," making it only a legal holding as to the offense charged and leaving unanswered the question of the defendant's guilt on any lesser included offenses. In essence, the State maintains that a directed verdict, unlike a jury verdict, is only an acquittal of the offense charged, and not an acquittal of the lesser included offenses.

¶12. The difference between a directed verdict and a jury verdict lies only in the source; the effect of acquittal is the same in either case. *Id.* After trial has begun on a multiple count indictment for one crime, a directed verdict of acquittal on that crime, such as deliberate design murder, prevents the trial from continuing on a lesser included offense, such as aggravated assault, when the lesser included offense was not specifically pleaded in the indictment.

¶13. Our conclusion finds support in the logical premise that a judgment of acquittal, whether entered by jury verdict or by grant of a directed verdict, should be accorded equal weight and consequences. *People v. McElroy*, 256 Cal. Rptr. 853, 858 (Cal. Ct. App. 1989). A jury's verdict of acquittal on the charged offense protects a defendant from further liability for any lesser offenses necessarily included in the charged offense unless that verdict is accompanied by an indication that the judgment of acquittal did not encompass acquittal of the uncharged lesser included offenses. Where a jury verdict both acquits the defendant of the greater offense and remains silent with respect to uncharged lesser included offenses, the defendant is protected from further liability. *People v. McDonald*, 690 P.2d 709, 727-28 (Cal. 1984).

¶14. Our holding here is in accord with the results of a trial court's judgment of acquittal. When a trial court grants a defendant's motion for directed verdict, the trial court should not thereafter be permitted to alter or modify its apparently unqualified acquittal by permitting the State, through amendment of the accusatory pleading, to charge necessarily included lesser offenses. In all criminal cases, the State is required to give notice to the defendant of what charges are being made against

him. U.R.C.C.C. 7.06 (1996) (formerly Unif. Crim. R. Cir. Ct. Prac. 2.05). Harris was therefore entitled to a grand jury indictment on aggravated assault before the jury could consider it. *See Eakes v. State*, 665 So. 2d 852, 859 (Miss. 1995). However, Harris was only charged with deliberate design murder. After the State put on its case-in-chief, the judge determined that the State did not prove murder. Only then was the decision made to charge Harris with aggravated assault. It is this decision that violated constitutional procedure. When the trial judge allowed the State to proceed on a charge of aggravated assault, he committed reversible error.

¶15. The cases cited by the State and Harris, especially *Quick v. State*, 569 So. 2d 1197 (Miss. 1990), are inapposite because they do not address the situation of a trial judge granting a directed verdict on the single charge in an indictment. A judgment of acquittal on an indictment charging only one crime establishes that the evidence was legally insufficient to support that charge. *See Smith v. State*, 646 So. 2d 538, 542 (Miss. 1994). Whether the evidence is present to sustain a lesser charge is irrelevant. The State cannot be allowed to charge only the highest offense and then test the evidence as it goes along until the burden for some lesser offense is met.

### III.

¶16. Since judgment of acquittal normally includes acquittal on all necessarily included lesser offenses, in the absence of separately pleaded counts, any amendment to the indictment to resurrect a lesser included offense would constitute a modification of the previously entered judgment. We therefore conclude that where the accusatory pleading fails separately to charge lesser included offenses, and the court grants a motion for directed verdict of acquittal, the judgment of acquittal on the charged offense includes acquittal on all uncharged lesser included felony offenses.

¶17. **REVERSED AND RENDERED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN AND MILLS, JJ., CONCUR. SMITH, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY ROBERTS, J. BANKS, J., NOT PARTICIPATING.**


**SMITH, JUSTICE, DISSENTING:**


¶18. I write separately to express my view that aggravated assault is a lesser included offense to deliberate design murder as our statutes are currently constituted. While *Johnson v. State*, 512 So. 2d 1256, 1251 (Miss. 1994), explicitly states that such is not the case, it is my belief that an examination of the elements of each offense clearly shows that the difference between them is merely one of degree. *See Hatcher v. State*, 210 Miss. 661, 666, 50 So. 2d 387, 389 (1951) ("The only difference between murder and an assault and battery with intent to kill and murder is in degree-- the homicide occurs in the former but is not consummated in the latter.").

¶19. In order for a lesser included offense instruction to be proper, the more serious offense, in this case deliberate design murder, must include all the elements of the lesser offense, in this case

aggravated assault. ***Hailey v. State***, 537 So. 2d 411, 415 (Miss. 1988). It must be impossible to commit the greater offense without at the same time committing the lesser included offense. ***Id.***

¶20. Under Miss. Code Ann. § 97-3-19(1)(a), as amended, the elements of a murder by deliberate design are (1) an unauthorized killing of a person; and (2) intent to kill that person or any other. Under Miss. Code Ann. § 97-3-7(2)(a), as amended, a person is guilty of aggravated assault when he causes or attempts to cause serious bodily injury to another or causes that injury purposely, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life.

¶21. I would submit that a killing necessarily entails a serious bodily injury, and where there is a showing of intent to cause that injury or a reckless disregard for the fact that such an injury might occur, the elements of the crime have been met. One cannot kill without inflicting serious bodily harm, just as one cannot intend to kill without intending to seriously injure. Since it is not possible to commit a murder by deliberate design without also committing an aggravated assault, aggravated assault must be a lesser included offense of deliberate design murder.

¶22. The Majority goes around this issue without addressing it. I would overrule ***Johnson v. State*** and any case like it insofar as they hold that aggravated assault is not a lesser included offense of murder.

¶23. For this reason, I respectfully dissent.

**ROBERTS, J., JOINS THIS OPINION.**