# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 98-KA-00047-SCT

*FREDDIE LEE WOLFE a/k/a FREDDIE LEE WOLFE, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/11/1997 |
| TRIAL JUDGE: | HON. JANNIE M. LEWIS |
| COURT FROM WHICH APPEALED: | YAZOO COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | JAMES H. ARNOLD, JR. |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: PAT S. FLYNN |
| DISTRICT ATTORNEY: | JAMES H. POWELL, III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | REVERSED AND REMANDED - 8/26/99 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 09/16/99 |

**EN BANC.**

**COBB, JUSTICE, FOR THE COURT:**

## STATEMENT OF THE CASE

¶1. Appellant Freddie Lee Wolfe was convicted by a jury for feloniously abusing his ten- year-old daughter, Vicky. The trial court found that Wolfe was an habitual offender and sentenced him to life without parole in custody of the Mississippi Department of Corrections.

¶2. At trial, Wolfe moved for a directed verdict, asserting that the State had failed to prove the element of serious bodily harm. The trial court denied the motion, but

removed the element of serious bodily harm from the case and allowed the State to proceed under the element of torture. Wolfe objected that this was an impermissible amendment to the indictment and a violation of due process.

¶3. Following the jury's verdict finding Wolfe guilty under the element of torture, he filed a motion for a new trial which was subsequently denied. Taking exception with the judgment and sentence issued in the lower court, Wolfe appealed to this Court raising the following issues:

**I. THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTION TO AMEND THE INDICTMENT AT THE CLOSE OF THE PROSECUTION'S CASE.**

**II. THE TRIAL COURT ERRED IN ALLOWING EVIDENCE OF PRIOR BAD ACTS.**

**III. THE TRIAL COURT ERRED IN PERMITTING HEARSAY TESTIMONY.**

**IV. THE TRIAL COURT ERRED IN ALLOWING A LAY WITNESS TO OPINE THAT VICKY WOLFE'S INJURIES WERE CONSISTENT WITH CHILD ABUSE.**

**V. THE JURY'S VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE.**

**VI. THE SENTENCE OF LIFE WITHOUT PAROLE IS DISPROPORTIONATE TO THE CRIME.**

**VII. THE ERRORS TAKEN TOGETHER ARE CAUSE FOR REVERSAL.**

¶4. Because we reverse and remand on matters pertinent to the first issue, we do not address the remainder of Wolfe's claims.

## STATEMENT OF THE FACTS

¶5. In 1990, Wolfe was convicted of felonious child abuse of his daughter Vicky Wolfe, who was three years old at the time.[1] Wolfe was placed in the custody of the Mississippi Department of Corrections and was released from prison on April 12, 1997.

¶6. Only ten days after his release, Wolfe was arrested again for the felonious abuse of

Vicky. Vicky's teacher testified that when she touched Vicky on the shoulder, the child flinched and pulled away. When asked what was wrong, Vicky said her father had whipped her for not doing her homework correctly. Vicky was a special education student with a diagnosed learning disability.

¶7. Vicky's teacher had been a Department of Human Services social worker in 1990 and had investigated the case of child abuse which sent Freddie Wolfe to prison at that time. Knowing the family background, she called the Department of Human Services and reported the latest incident of abuse.

¶8. When the DHS social worker came to interview Vicky the next day, she and the teacher looked at Vicky's injuries. Pictures were taken of Vicky's back and shoulders, and these photos were later presented to the jury. As a result of the DHS investigation, Vicky and her younger sister were removed from the home and placed with relatives. When interviewed by the DHS social worker, Wolfe admitted whipping Vicky because she did not do her homework properly.

¶9. At trial, the Yazoo City police chief and another officer testified that they interviewed Wolfe and he admitted striking the child with a leather purse strap. The chief testified that the strap was about fourteen (14) inches long and one-quarter inch wide. The strap was admitted into evidence. The chief also testified that Wolfe was convicted in 1990 for striking Vicky with an extension cord which had been cut into two strips and bound with tape.

¶10. Vicky's mother testified for the defense and said that she, too, had hit Vicky with the strap. She admitted that Wolfe had whipped the child with the strap several times since he had been home, but said he had left bruises only the last time.

¶11. Vicky Wolfe was called as a witness for the defense. She said both her father and mother had whipped her with the strap, but that her mother had never struck her around the shoulders. Vicky testified that she told her teacher that her father had hit her on the back, but that he was trying to hit her on the behind and missed. Vicky's grandmother testified that she had seen no sign of physical abuse after Wolfe had come home from prison and that the children never told her they were being abused.

¶12. Freddie Wolfe testified and admitted "spanking" Vicky with the strap. He said he considered welts as a normal consequence of spanking. He said he had intended no abuse of the child, either in 1990 or in 1997.

¶13. The jury found Wolfe guilty of felony child abuse. After a hearing in which Wolfe was adjudged to be an habitual offender, the trial court sentenced Wolfe to life without parole.

# DISCUSSION OF THE ISSUES

## I. THE TRIAL COURT ERRED IN ALLOWING THE PROSECUTION TO AMEND THE INDICTMENT AT THE CLOSE OF THE PROSECUTION'S CASE.

¶14. Wolfe contends that the trial judge committed reversible error by allowing the case to go to the jury on the element of torture, which was not mentioned in the indictment, after finding that there was insufficient evidence to support the element of serious bodily harm. Consequently, Wolfe claims that this case should be dismissed in his favor. The State responds that Wolfe had full notice of the torture element, asserting that the grand jury indictment cited Miss. Code Ann. § 97-5-39(2)(1994), which includes torture, although it did not specifically cite subpart (b) nor mention the word torture. The State asks this Court to affirm Wolfe's conviction and subsequent life sentence as an habitual offender.

¶15. At the close of the prosecution's case, the defense moved for a directed verdict on the ground that the prosecution failed to prove the element of serious bodily harm. The trial court agreed that proof of the element of serious bodily harm was insufficient. However, the trial court found that the prosecution had presented a prima facia case on the element of torture and therefore denied Wolfe's motion for a directed verdict. Specifically the trial court held:

> The Court has already denied the motion for directed verdict and has stated that the element of serious bodily harm has not been proven, but it will be submitted to the jury on the question of torture. Okay. So, it will go forward to the jury on the question of - - on the charge of felony child abuse. And, after that, if the State or the defense wish to put in any lesser-included offenses, then the Court will deal with that during the instructions, but at this point, the Court finds that the State has proved - - has shown a prima facie case on the element of torture.

Wolfe complains that this decision by the judge amounted to a mid-trial amendment of the indictment and was a violation of due process, rising to the level of reversible error.

¶16. The indictment returned by the Grand Jury states in pertinent part:

> . . . that Freddie Wolfe. . . did unlawfully, willfully, and feloniously and intentionally whip Vicky Wolfe, a child ten (10) years of age, by striking her about the back and shoulders with a purse strap thereby causing serious bodily harm to said child to wit: deep bruises to these areas, in violation of Section 97-5-39(2), of the Mississippi Code of 1972, as amended, against the peace and dignity of the State of Mississippi.

¶17. The indictment refers only to "serious bodily harm," and generally cites Miss. Code Ann. § 97-5-39(2), without referring in any way to the other two elements which are listed in subparts (a) and (b) of the statute as follows:

> (2) Any person who shall intentionally (a) burn any child, (b) torture any child or, (c) except in self-defense or in order to prevent bodily harm to a third party, whip, strike or otherwise mutilate any child in such manner as to cause serious bodily harm, shall be guilty of felonious abuse and/or battery of a child . . . .

Miss. Code Ann. § 97-5-39(2)(1994).

¶18. The Mississippi Constitution, Art. 3, § 27, requires that before a criminal defendant may be prosecuted for a felony, the grand jury must advise the defendant of the charges against him via an indictment. *State v. Berryhill*, 703 So. 2d 250, 256 (Miss. 1997); *Quick v. State*, 569 So. 2d 1197 (Miss. 1990). It has long since been the law of this State that courts may not amend an indictment as to a substantive matter, without the agreement of the grand jury which issued the indictment, unless the amendment only regards mere formalities. *Quick*, 569 So. 2d at 1199.

¶19. In *Quick v. State*, the defendant was indicted for aggravated assault under one specific subsection (Miss. Code Ann. § 97-3-7(2)(b)) which requires that the defendant acted purposefully, but on the morning of the trial, the State moved to amend the indictment to allow the jury to convict under a different subsection (§ 97-3-7(2)(a)) which requires only that the defendant recklessly caused serious bodily injury under circumstances manifesting extreme indifference to the value of human life. This Court specifically held in *Quick* that

> We hold here when the grand jury returned this indictment under sub-section (b), requiring purposeful and wilful and knowing actions, that stated the charge upon which this defendant could be tried. When the proposed amendment was offered to allow the jury to convict under section (a) of the statute to include recklessly causing serious bodily injury under circumstances manifesting extreme indifference to the value of human life, this proposed a change of substance and not of form.

*Quick*, 569 So. 2d at 1199-1200.

¶20. Because the indictment in the present case only mentioned "serious bodily harm," the element in § 97-5-39(2)(c), and did not mention "torture," the element in subpart (b), Wolfe claims that this decision by the trial court prejudiced him because he was not prepared to answer to the element of torture. Because the element of torture, in this context, has not been defined by statute, or by precedent in Mississippi, we agree. However, we disagree with Wolfe's assertion that this case should be dismissed in his

favor.

¶21. When the trial judge ruled that the prosecution failed to present sufficient evidence on the element of serious bodily harm, the judge erroneously based her decision on our holding in *Yates v. State*, 685 So. 2d 715 (Miss. 1996). In determining that the State had failed to prove the element of serious bodily harm, the trial judge misstated our holding as follows:

> Since we're going back to serious bodily injuries, I think under the **Gates** (sic) case, it states that in order for it to be serious bodily injury, you have to show an injury that will be detrimental to death or some disfigurement.

In *Yates*, (citing **Fleming v. State**, 604 So. 2d 280, 293 (Miss. 1992)), this Court recited the definition of "serious bodily injury" contained in the Model Penal Code § 210 (1980), which states:

> "serious bodily injury" means bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.

Regarding this definition, we said specifically in *Yates* that:

> The revised statute requires a showing of serious bodily harm but does not provide a definition for 'serious bodily harm.' Necessarily we must look to our case law for a definition. In **Fleming v. State**, 604 So. 2d 280, 292 (Miss. 1992), this Court cited favorably the definition for 'serious bodily injury' provided in Model Penal Code § 210 . . . .

¶22. In *Yates*, this Court did recognize the above-stated definition to demonstrate that the defendant's whipping of a little boy on the upper leg and buttocks with a belt which resulted in superficial bruises and contusions did not rise to the level of felony child abuse. However, we did not expressly adopt the Model Penal Code definition to serve as the threshold standard to determine if serious bodily harm had been inflicted on a child in the context of a child abuse case. It should be noted that the definition cited in *Yates*, a child abuse case, came from **Fleming**, an aggravated assault case. This Court recognizes that applying the same standard for serious bodily harm in a child abuse case and an aggravated assault case is highly problematic due to the heightened level of vulnerability inherent in victims of child abuse. Employing the same definition in both contexts would necessarily raise the standard too high to ensure the safety and protection of children in the State of Mississippi.

¶23. Consequently, a definition of serious bodily harm more suited to the context of child abuse cases is necessary. The National Center on Child Abuse and Neglect in its

Model Child Protection Act has defined physical injury that amounts to child maltreatment as "death, or permanent or temporary disfigurement, or impairment of any bodily organ or function." Model Child Protection Act § 4f (U.S. National Center on Child Abuse and Neglect 1977). The difference, though subtle, is important. "Impairment of any bodily organ or function" is a lower threshold than the "protracted loss or impairment of the function of any bodily member or organ."

¶24. We find that the Model Child Protection Act definition more appropriately describes the type of injuries classified as serious bodily harm in the context of child abuse cases. Therefore, this Court adopts the definition of "serious bodily harm," as it pertains to Miss. Code Ann. § 97-5-39(2)(c)(1994), as follows: bodily injury which creates a substantial risk of death, or permanent or temporary disfigurement, or impairment of any bodily organ or function.

¶25. It is important to note, however, that this Court's decision to lower the threshold for the proof of serious bodily harm in felony child abuse cases should in no way be construed as an attempt to prevent parents, teachers and other custodians involved in child care from properly disciplining their children. As long as the discipline is moderate and reasonable in light of the age and condition of the child, and other surrounding circumstances, the parent or custodian will not incur criminal liability.

¶26. This Court finds that the trial judge's dismissal of the element of serious bodily harm was plain error, because it was based on a misstatement of a standard never expressly adopted by this Court. This Court further finds that requiring the defendant to go forward on the element of torture, given the wording of the indictment, was prejudicial and reversible error.

¶27. Because the disposition of the first issue renders the others moot, we do not consider the remainder of Wolfe's claims.

## CONCLUSION

¶28. The indictment under which Wolfe was charged, although citing generally Miss. Code Ann. § 97-5-39(2), specifically mentioned only "serious bodily harm" and made no mention of "torture." In light of the fact that torture as it applies to a child abuse case has not been defined by statute or precedent in Mississippi, Wolfe was prejudiced because he did not have adequate notice to defend against the torture charge. Additionally, the trial judge erroneously dismissed the element of serious bodily harm, basing her decision on a definition never expressly adopted by this Court. The conviction of Wolfe for felony child
abuse and his life sentence as an habitual offender is reversed, and this case remanded for further proceedings consistent with this decision.

¶29. **REVERSED AND REMANDED.**

**PRATHER, C.J., PITTMAN, P.J., AND WALLER, J., CONCUR. BANKS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY MILLS, J. McRAE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. SMITH, J., NOT PARTICIPATING.**

BANKS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶30. I concur in the judgment to the extent that it reverses the conviction for felony child abuse. However, it is my view that the definition of "serious bodily injury" which we accepted in *Yates v. State,* 685 So. 2d 715 (Miss. 1996), is both in keeping with the intent of the statute as passed by the legislature and the prevailing definition accepted by our sister states around the country. There is no reason, therefore, to modify that definition. I am further of the view that the definition which the majority espouses, even if accepted and applied to the facts of this case, would not change the outcome because the proven conduct does not rise to the level of serious bodily injury under either definition. Accordingly, I respectfully dissent in part. I would not reverse and remand this case for a new trial. I would reverse and remand for sentencing for misdemeanor child abuse.

I.

¶31. The trial court correctly applied our decision in *Yates* in ruling that there must be a showing of a specific injury as named in the statute or one that fits the category "serious bodily injury" in order to find that there was child abuse. It also correctly, in my view, arrived at the conclusion that the conduct shown did not result in serious bodily injury as that term was defined in *Yates*. The common sense fact is that two or three bruises on the back from a whipping with a small strap fall well short of serious bodily injury as that term is popularly understood.

¶32. We have had occasion to define the term as it appears elsewhere in our statutory law. *Fleming v. State,* 604 So. 2d 280 (Miss. 1992). In *Yates* we applied that definition, from the Model Penal Code, to child abuse cases. There is no reason, in my view, to abandon that recently established precedent. As far as the writer can ascertain, it is this definition which prevails in other jurisdictions by statute or case law. *See, e.g.*, Ariz. Rev. Stat. § 13-3623 (1989); Colo. Rev. Stat. § 18-1-901(3)(p) (1998); Neb. Rev.

Stat. § 28-109 (1995); Tenn. Code Ann. § 39-11-106 (1997); Tex. Penal Code Ann. § 1.07 (46) (West 1991); W. Va. Code § 61-8B-1(10) (1998); *see also*, **People v. Sheldon**, 602 P.2d 869 (Colo. 1979); **State v. Rundle**, 480 N.W.2d 518, 522 (Wis. Ct. App. 1992) .

¶33. Clearly the legislature has drawn a bright line of demarcation between the conduct punished as felonious and that which may rise to the level of a misdemeanor to be treated as such and otherwise to be addressed by our civil processes. That is its prerogative as it tries to balance the competing interests of protecting children while not unreasonably intruding upon the prerogatives and beliefs of parents and other care givers. We should not blur the distinction adopted by the legislature by elasticizing the definition of serious bodily injury. As a demonstration of its awareness of the need to protect children, the legislature has provided a misdemeanor with a greater punishment, up to one year in jail, than would otherwise be the case if the victim were an adult and the crime charged simple assault, carrying a maximum punishment of six months in jail. Miss. Code Ann. § 97-5-39(1).

¶34. But even if we adopt a definition that is, in the view of the majority, subtlety distinguishable from the *Yates* formulation, the instant case would not be affected. The injuries sustained this case do not rise even to that level. The trial court appropriately ruled that the state had failed to prove serious bodily injury.

## II.

¶35. The trial court just as clearly erred in allowing the state to proceed on the "torture" theory. The indictment in this case charged Wolfe with felony child abuse of the child by "striking her about the back and shoulders with a purse strap thereby causing serious bodily harm to said child to wit: deep bruises to those areas..." Neither the word "torture" nor any description which would lead one to believe that torture occurred was alleged. Our decision in **Griffin v. State**, 540 So. 2d 17 (Miss. 1989), should control this issue. The majority correctly acknowledges this fact. The question is where do we go from there.

¶36. The trial court refused to grant Wolfe's motion for directed verdict. Instead it allowed the case to go to the jury on the torture theory and upon the lesser included or related offenses of attempted torture, attempted serious bodily injury or misdemeanor child abuse. We are confronted then by our decision in **Harris v. State,** 723 So. 2d 546 (Miss. 1997). In **Harris**, a defendant charged with murder was granted a directed verdict on the charge of murder at the close of the state's case. The Court allowed the state to proceed on the lesser included offense of aggravated assault. This Court held that the acquittal on the murder charge ended the matter and that the state was then

powerless to go forward on a lesser included offense for which the defendant was not indicted, just as clearly as it would have been had there been a jury verdict of acquittal.

¶37. Crucial to that decision is the fact that, under our longstanding precedents, assault is not viewed as a lesser included offense to the crime of murder, a point acknowledged by the dissenters in *Harris* who urged that those precedents be overruled. *Johnson v. State,* 512 So. 2d 1246, 1251 (Miss. 1987); *Scott v. State*, 60 Miss. 268 (1882). Clearly *Harris* did not nullify our statute which allows the jury to find guilt of any inferior offense "the commission of which is necessarily included in the offense with which he is charged...." Miss. Code Ann. § 99-19-5 (1994)

¶38. In *Yates* we agreed that misdemeanor child abuse is necessarily included in a charge of felony child abuse where the latter charge is predicated on serious bodily injury. There we remanded for resentencing on misdemeanor child abuse over a strenuous dissent, despite the fact that there had been no instruction given the jury on the same. Here, there was such an instruction given. We should reverse and remand this case for sentencing on misdemeanor child abuse.

## MILLS, J., JOINS THIS OPINION.

## McRAE, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:

¶39. I concur in that the case should be reversed; however, because I believe that the case should be reversed and rendered, I dissent.

¶40. Wolfe was indicted under the statute proscribing the felonious abuse and/or battery of a child - Miss. Code Ann. § 97-5-39(2) (1994). The statute contains several definitions of felonious abuse, to wit:

> Any person who shall intentionally a) burn any child, b) torture any child or, c) except in self-defense or in order to prevent bodily harm to a third party, whip, strike, or otherwise abuse or mutilate any child in such a manner as to cause serious bodily harm, shall be guilty of felonious child abuse and, upon conviction, may be punished by imprisonment in the penititentiary for not more than twenty (20) years.

Miss. Code Ann. § 97-5-39(2) (1994).

¶41. Wolfe's indictment charged him with violating §97-5-39(2) by "striking her about the back and shoulders with a purse strap thereby causing bodily harm to said child . . . . " Wolfe, then was charged with having violated subpart (2)(c) of the statute.

¶42. At the close of the state's case, Wolfe moved for a directed verdict on the

grounds that the state had failed to prove **serious bodily injury.** The trial court, after expressing concerns that the element of serious bodily injury had not been met, denied the motion but did so only after allowing the prosecution to amend the indictment to change the charge from "serious bodily injury" to torture. Because of the trial court's ruling, the jury was instructed on torture and not as to serious bodily injury. The effect was the same as though the trial court granted a directed verdict on serious bodily injury. This is no different from the case of ***Harris v. State***, 723 So.2d 546 (Miss. 1997), where the trial court allowed the case to go to the jury on an amended indictment. The state was given its opportunity to prove its case against the defendant, and it failed. Our law requires the defendant to be discharged.

¶43. In ***Yates v. State***, 685 So.2d 715 (Miss. 1996), this Court held that the defendant's whipping of a little boy on the upper leg and buttocks with a belt which resulted in superficial bruises and contusions did not rise to the level of serious bodily injury. The trial court in this case, then, was correct when it held that the evidence was insufficient to go to the jury on serious bodily harm; it was, however, wrong to allow the indictment to be amended in the middle of the trial. The case of ***Harris v. State***, *supra*, dictates that the directed verdict on the charge of felony child abuse operates to relieve the defendant of liability on any lesser charge unless it can be said that the directed verdict on the greater charge did not encompass a directed verdict on the lesser charge. Silence on this subject is interpreted in favor of the defendant. ***Harris v. State***, 723 So.2d at 548. Regardless, ***Yates*** dictates the outcome of this case. The majority, worried that double jeopardy would apply, has written an opinion that can only be described as "result oriented."

¶44. Dissatisfied by the result required by a fair application of ***Yates*** and ***Harris*** to the facts in this case, the majority has taken the opportunity to redefine serious bodily injury so as to embrace the facts here and, in light of the fact that the prosecution did not bring a cross-appeal, reverses the trial court's directed verdict under its "plain error" power. This is just plain wrong. I can find no cases in this Court's history where we have found the granting of a directed verdict to be plain error where the same was not raised on appeal or cross appeal. *See, e.g.,* ***In Re Estate of Stewart***, 732 So.2d 255, 257 (Miss. 1999) (court will not consider issue where not raised on cross-appeal). We have never hesitated to apply procedural bars to the detriment of criminal defendants. No reason exists for us to ignore our rules to assist the prosecution in this case especially when we are forced to rewrite the definition of serious bodily harm to do so.

¶45. Furthermore, despite the fact that the majority warns that this case should in no way "be construed as an attempt to prevent parents, teachers and other custodians involved in child care from properly disciplining their children", I fear that it will do

just that. Redefining "serious bodily injury" to include the risk of temporary disfigurement means that any parent who leaves a bruise or red spot on a child as the result of a well-deserved spanking is at risk of being found guilty of felony child abuse. The maxim of "spare the rod, spoil the child" is now passé.

¶46. The instant case should be reversed and rendered. Our previous cases of ***Yates*** and ***Harris*** demand no less. Therefore, I concur in the majority's reversal but dissent insofar as the majority refuses to render.

## SULLIVAN, P.J., JOINS THIS OPINION.

1. Wolfe also received a manslaughter conviction in 1980, in connection with the death of his oldest child.