GRIFFIS, J., for the Court:
 

 ¶ 1. Toby Lee Henry appeals his conviction of felony child abuse in violation of Mississippi Code Annotated section 97-5-39(2)(a) (Rev.2006). He claims that: (1) he was denied his constitutional right to counsel; (2) he was denied effective assistance of counsel; and (3) the current interpretation of the felony child-abuse statute violates his right to due process. We find no reversible error and affirm.
 

 FACTS
 

 ¶ 2. On February 25, 2007, Melissa
 
 [1]
 
 went to the home of her granddaughter, Sarah, and Henry, who was Sarah’s live-in-boyfriend at the time,
 
 [2]
 
 to visit her two-year-old great-grandson, Jonathan. Henry is not Jonathan’s biological father. When Melissa arrived, she noticed a big bump on Jonathan’s head. Melissa took Sarah to work and took Jonathan to her house for the afternoon. While Melissa was helping Jonathan use the bathroom, she noticed bruising on his buttocks and legs.
 

 ¶ 3. Melissa took Jonathan to the emergency room. X-rays were performed, but Jonathan had no broken bones. Dr. Keith McCoy testified regarding his examination of Jonathan at the emergency room. Dr.
 
 *624
 
 McCoy found multiple contusions, or bruising, of the skin. He stated that the bruise on Jonathan’s head was typical of children that age because toddlers often fall headfirst due to the weight of their heads.
 

 ¶ 4. Dr. McCoy found contusions on both of Jonathan’s upper arms. Each arm had four circular bruises consistent with someone grabbing the arm with strong force. There were also bruises on Jonathan’s hips and buttocks. Dr. McCoy testified that these bruises were also caused by strong force. He further stated that the degree of bruising and the large area of bruising-on Jonathan’s body were not typical.
 

 ¶ 5. Dr. McCoy also found a bite mark on Jonathan’s inner thigh caused by strong force that would have caused discomfort and distress to Jonathan. Dr. McCoy testified that Jonathan’s injuries could not be reconciled with child discipline. He concluded that the injuries caused temporary disfigurement of an organ — Jonathan’s skin.
 

 ¶ 6. Deputy Mark Miley of the Lowndes County Sheriffs Department was called to the hospital. He took several pictures of Jonathan’s injuries for use in the investigation. Lieutenant Greg Wright arrived later to begin the investigation. He interviewed Henry and Sarah at the sheriffs department. Henry signed a
 
 Miranda
 
 waiver and gave a written statement.
 

 ¶ 7. Henry’s statement said that Jonathan hit the couple’s six-week-old baby in the face. Henry grabbed Jonathan by the diaper, pulled the diaper off, and put Jonathan in his lap. He said he spanked Jonathan with his hand two to three times. He admitted that he was upset while he was spanking Jonathan. He further admitted that he bit Jonathan on another occasion, but he said that the bite was done while playing and that Jonathan did not indicate that it caused him any pain.
 

 ¶ 8. Henry was indicted for felony child abuse, and he was appointed a public defender by the circuit court. Following a continuance of the trial, Henry retained Joseph 0. Sams, Jr., as trial counsel who was substituted for the public defender. On December 7, 2007, the circuit court entered an order continuing the trial because Sams was ill. The trial was continued again because Sams’s phone line was disconnected and the State was unable to reach him regarding the case.
 

 ¶ 9. The trial began on August 27, 2008, and the jury found Henry guilty as charged. Henry was sentenced to serve twenty years in the custody of the Mississippi Department of Corrections followed by five years of post-release supervision. Henry’s motion for a judgment notwithstanding the verdict or, alternatively, a new trial was denied.
 

 ANALYSIS
 

 1. Whether Henry was denied his constitutional right to counsel because his trial counsel took inactive status with The Mississippi Bar before Henry’s trial.
 

 ¶ 10. Henry claims that his representation by Sams, an inactive member of The Mississippi Bar, deprived him of his right to counsel. The State responds that Sams’s administrative status with The Mississippi Bar is insufficient to violate Henry’s right to counsel.
 

 ¶ 11. Henry’s trial began on August 28, 2008; however, Sams’s status with The Mississippi Bar changed from active to inactive on August 1, 2008. Henry claims that he was unaware of this status change. There is no indication in the record as to why Sams took inactive status.
 

 ¶ 12. Henry correctly asserts that an inactive member of The Mississippi Bar is not authorized to practice law in this state,
 
 *625
 
 citing Mississippi Code Annotated section 73-3-120 (Rev.2008) which states, in pertinent part, that:
 

 (a) “Active member” means any person admitted to practice law in this state and who is engaged in the practice of law in this state. Except as otherwise provided in Section 73-3-125, all active members shall be entitled to vote and hold office in the bar.
 

 (b) “Inactive member” means any member, in good standing, who is not engaged in the practice of law in this state. A person may, upon written request, be enrolled as an inactive member. Inactive members shall not be entitled to vote and hold office in the bar.
 

 There is no question that Sams was engaged in the practice of law during his representation of Henry. However, we find that Sams’s recent status change with The Mississippi Bar was harmless error as it relates to the jury’s verdict in this case.
 

 ¶ 13. The supreme court has held that: The basic test for harmless error in the federal constitutional realm ... is whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained .... [T]he inquiry is not whether the jury considered the improper evidence or law at all, but rather, whether that error was unimportant in relation to everything else the jury considered on the issue in question, as revealed in the record.
 

 Thomas v. State,
 
 711 So.2d 867, 872-73 (¶25) (Miss.1998) (internal citations and quotations omitted). Everyone involved in these proceedings, including the jury, was unaware of Sams’s inactive status. Henry does not assert any effect Sams’s status had on the jury’s finding of guilt.
 

 ¶ 14. Further, “[t]o warrant reversal on an issue, two elements must be shown: error, and injury to the party appealing.”
 
 Catholic Diocese of Natchez-Jackson v. Jaquith,
 
 224 So.2d 216, 221 (Miss.1969) (quoting 5 Am.Jur.2d
 
 Appeal and Error
 
 § 776 (1962)). Henry has not shown this Court how he was prejudiced by Sams’s inactive status. The closest argument to any type of prejudice is Henry’s assertion that inactive members “are not subject to the same requirements for maintaining their legal acumen and continuing education.” However, this argument fails to show prejudice to Henry because Sams had been an inactive member for less than one month — clearly an insufficient period of time to claim that Sams’s continuing education was lacking.
 

 ¶ 15. We find that Sams’s inactive status with The Mississippi Bar constitutes harmless error because Henry fails to show any prejudice as a result of Sams’s status and because such status had no effect on the jury’s determination of guilt. Accordingly, this assignment of error does not warrant reversal.
 

 2. Whether Henry was denied effective assistance of counsel.
 

 ¶ 16. Henry asserts that, in addition to being an inactive member of the bar, Sams’s overall performance during his representation of Henry constitutes ineffective assistance of counsel. Specifically, he claims that Sams was ineffective due to his: (1) lack of preparation of a defense, (2) failure to advise Henry of the correct maximum penalty for felony child abuse, (3) failure to request a new jury venire or a mistrial, (4) physical infirmities during trial, (5) failure to prepare an argument for the
 
 Peterson
 
 hearing, and (6) failure to object to improper prosecutorial comments in the State’s closing argument.
 

 ¶ 17. To prove ineffective assistance of counsel, Henry must show that: (1) his counsel’s performance was deficient, and
 
 *626
 
 (2) this deficiency prejudiced his defense.
 
 Strickland v. Washington,
 
 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The burden of proof rests with Henry to show both prongs.
 
 McQuarter v. State,
 
 574 So.2d 685, 687 (Miss.1990). Under
 
 Strickland,
 
 there is a strong presumption that counsel’s performance falls within the range of reasonable professional assistance.
 
 Strickland,
 
 466 U.S. at 689, 104 S.Ct. 2052. To overcome this presumption, “[t]he defendant must show that there is a reasonable probability that, but for the counsel’s unprofessional errors, the result of the proceeding would have been different.”
 
 Id.
 
 at 694,104 S.Ct. 2052.
 

 ¶ 18. Furthermore, the merits of an ineffective-assistance-of-counsel claim on direct appeal should be addressed only when “(1) the record affirmatively show[s] ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.”
 
 Colenburg v. State,
 
 735 So.2d 1099, 1101 (¶ 5) (Miss.Ct.App.1999). If this Court does not reverse on other grounds and is unable to conclude that the defendant received ineffective assistance of counsel, it should affirm “without prejudice to the defendant’s right to raise the ineffective assistance of counsel issue via appropriate post-conviction proceedings.”
 
 Id.
 
 Review on direct appeal of an ineffective-assistance-of-counsel claim is confined strictly to the record.
 
 Id.
 
 at 1102 (¶ 6).
 

 A. Preparation of a Defense
 

 ¶ 19. Henry contends that Sams did not prepare a proper defense because Sams made certain assertions during opening statements that were not proven by the evidence presented at trial. First, Sams stated that Henry was incarcerated on the date that the indictment alleged he committed the crime of felony child abuse; therefore, Henry could not be convicted under the indictment. Second, Sams suggested that the bite mark on Jonathan’s leg was caused by the neighbor’s child. Both of these assertions were disproved by the evidence at trial — Deputy Miley testified that Henry was not incarcerated on the date listed in the indictment, and Henry’s statement given at the sheriffs department admitted that he, not the neighbor’s child, bit Jonathan’s leg.
 

 ¶ 20. It is unclear from the record before us that these assertions amount to Sams’s lack of preparation of a defense as Henry now claims. “Opening statements are part of trial strategy.”
 
 Carroll v. State,
 
 755 So.2d 483, 488 (¶ 17) (Miss.Ct. App.1999) (citing
 
 Eakes v. State,
 
 665 So.2d 852, 873 (Miss.1995)). Further, Henry has not proven that the outcome of the trial was prejudiced by these comments, especially in light of the overwhelming weight of evidence against him, including Henry’s own statement admitting that he spanked and bit Jonathan coupled with eyewitness and medical testimony regarding the severity of Jonathan’s injuries.
 

 B. Failure to Advise Henry of the Correct Maximum Penalty for Felony Child Abuse
 

 ¶21. Henry claims that Sams incorrectly informed him that the maximum penalty for felony child abuse was twenty years instead of the correct maximum sentence which is life in prison.
 
 See
 
 Miss. Code Ann. § 97-5-39(2)(a) (setting the sentence for felony child abuse at “life or such lesser term of imprisonment as the court may determine but not less than ten (10) years”). He offers no proof of this assertion. In his brief, he quotes Sams’s statement during voir dire in which Sams compared himself to Henry, stating: “But fortunately, I’m not standing here worried
 
 *627
 
 about going away for 20 years of my life.” This statement was made to the jury, not in the context of informing Henry of the maximum sentence. Further, the statement does not say that twenty years is the maximum penalty for felony child abuse. It merely suggested to the jury the possibility that Henry could go to prison for twenty years; such possibility was completely valid under the statute.
 

 C.Failure to Request a New Jury Venire or a Mistrial
 

 ¶ 22. At the conclusion of a brief recess during voir dire, Henry entered the courtroom carrying a small child. The circuit court reprimanded Henry and told Sams to take his client and the child out of the courtroom. The circuit court told Sams, “you know better.” The State then asked the jury venire whether the “spectacle of this defendant bringing a baby into the courtroom” had affected their judgment in the case. Several jurors raised their hands and were struck from the jury venire.
 

 ¶ 23. Henry claims that this clearly shows that the jury venire was tainted because of the possibility that some jurors were affected but failed to respond to the State’s question. Again, the record does not affirmatively prove this assertion. We cannot assume that certain jurors failed to respond to a direct question during voir dire. Furthermore, there is no evidence that Sams orchestrated this situation. It is entirely possible that Henry himself, independent of any direction from Sams, decided to bring the baby into the courtroom.
 

 D.Physical Infirmities During Trial
 

 ¶ 24. Henry cites to certain portions of the transcript where Sams requested to sit instead of stand while questioning a witness. He claims that this proves that Sams was physically infirm and lacked the stamina required to represent a criminal defendant. There is no evidence in the record to show that Sams’s need to sit instead of stand prejudiced Henry’s defense in any way.
 

 E.Failure to Prepare an Argument for the Peterson Hearing
 

 ¶ 25. Henry had a prior conviction in 2002 for accessory after the fact to burglary. The circuit court conducted a
 
 Peterson
 
 hearing after the State expressed its wish to use the conviction for impeachment purposes should Henry take the stand. The State argued that burglary had some impeachment value. Sams chose not to argue in opposition, and the circuit court ruled that the conviction was admissible for impeachment purposes.
 

 ¶ 26. Henry contends that this is proof of Sams’s failure to prepare for the hearing. However, the record is insufficient to support that claim. Counsel’s choice of whether or not to argue a motion falls within such counsel’s trial strategy. It is possible that Henry had already made the decision that he would not testify. If so, Sams’s argument in the
 
 Peterson
 
 hearing would be unnecessary. The record on appeal is insufficient to support this assertion of ineffective assistance.
 

 F.Failure to Object to Improper Prosecutorial Comments in the State’s Closing Argument
 

 ¶ 27. The prosecutor made the following comments during closing argument:
 

 And, Ladies and Gentlemen, you’re told that there’s no evidence of any serious bodily injury. That’s outrageous. I don’t know what’s happened to America. I don’t know what’s happened to the America I knew. We’ve lost our sense of outrage. If those pictures don’t outrage you, if those pictures don’t stick in
 
 *628
 
 your throat, there’s something fundamentally wrong with you.
 

 Henry claims that Sams’s failure to object to this “send-a-message” argument amounts to ineffective assistance. However, “[cjounsel’s choice of whether or not to file certain motions, call certain witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy.”
 
 Scott v. State,
 
 742 So.2d 1190, 1196 (¶ 14) (Miss.Ct.App.1999). Sams most likely wished to avoid drawing further attention to the photographs referenced by the prosecutor that depicted the severity of Jonathan’s injuries.
 

 ¶ 28. We find that the record before us on appeal is insufficient to affirmatively show ineffective assistance of counsel of constitutional dimensions. As such, we deny relief on this issue without prejudice so that Henry may present an ineffective-assistance-of-counsel claim in a motion for post-conviction collateral relief.
 

 8. Whether the current interpretation of the felony child-abuse statute violates Hemp’s right to due process.
 

 ¶ 29. Henry argues that the supreme court’s interpretation of the phrase “serious bodily harm” found in the felony child-abuse statute violates the Rule of Lenity and the Whole Act Rule. Specifically, he claims that if temporary disfigurement of an organ, i.e., bruising of the skin, constitutes serious bodily harm, there is no clear distinction between felony child abuse and misdemeanor , child abuse. The State responds that there is sufficient evidence to show that Jonathan’s injuries were severe enough to establish felony child abuse.
 

 ¶ 30. Mississippi Code Annotated section 97-5-39(2)(a) governing felony child abuse states the following:
 

 Any person who shall intentionally (i) burn any child, (ii) torture any child or, (in) except in self-defense or in order to prevent bodily harm to a third party, whip, strike or otherwise abuse or mutilate any child in such a manner as to cause
 
 serious bodily harm,
 
 shall be guilty of felonious abuse of a child and, upon conviction, shall be sentenced to imprisonment in the custody of the Department of Corrections for life or such lesser term of imprisonment as the court may determine, but not less than ten (10) years. For any second or subsequent conviction under this subsection, the person shall be sentenced to imprisonment for life.
 

 (Emphasis added).
 

 ¶ 31. Mississippi Code Annotated section 97-5-39(l)(a) governing misdemeanor child abuse states the following, in pertinent part:
 

 Except as otherwise provided in this section, any parent, guardian or other person who willfully commits any act or omits the performance of any duty, which act or omission contributes to or tends to contribute to the neglect or delinquency of any child or which act or omission results in the
 
 abuse of any child, as defined in Section 43-21-105(m.)
 
 of the Youth Court Law, ... shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine not to exceed One Thousand Dollars ($1,000.00), or by imprisonment not to exceed one (1) year in jail, or by both such fine and imprisonment.
 

 Mississippi Code Annotated section 43-21-105(m) (Rev.2009) defines “abused child” as:
 

 a child whose parent, guardian or custodian or any person responsible for his care or support, whether legally obligated to do so or not, has caused or allowed to be caused upon said child sexual abuse, sexual exploitation, emotional
 
 *629
 
 abuse, mental injury,
 
 nonaccidental physical injury or other maltreatment.
 
 Provided, however, that physical discipline, including spanking, performed on a child by a parent, guardian or custodian in a reasonable manner shall not be deemed abuse under this section.
 

 (Emphasis added).
 

 ¶ 32. The supreme court first defined serious bodily harm in
 
 Yates v. State,
 
 685 So.2d 715 (Miss.1996), overruled by
 
 Buffington v. State,
 
 824 So.2d 576, 580 (¶ 15) (Miss.2002). The supreme court adopted the following definition: “‘serious bodily injury’ means bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ.”
 
 Id.
 
 at 720 (citation omitted). The
 
 Yates
 
 court further found that the only distinction between felony child abuse and misdemeanor child abuse is the element of serious bodily harm, stating:
 

 The elements necessary to prove felonious child abuse are whether Yates did: (1) willfully (2) cause (3) serious bodily harm (4) to a child.
 

 [[Image here]]
 

 [A]s to misdemeanor child abuse, the elements to consider include whether Yates did: (1) willfully (2) cause (3) non-accidental physical injury (4) to a child.
 

 Id.
 
 at 719. Thus, following the
 
 Yates
 
 decision, the prosecution was required to show injuries resulting in a substantial risk of death or “serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ” to prove the required elements of felony child abuse.
 

 ¶ 33. In
 
 Wolfe v. State,
 
 743 So.2d 380, 385 (¶ 24) (Miss.1999), a plurality opinion of the supreme court adopted a different definition of serious bodily harm in the context of felony child-abuse cases. The
 
 Wolfe
 
 decision held that serious bodily harm should be defined as: “bodily injury which creates a substantial risk of death, or permanent or
 
 temporary
 
 disfigurement, or impairment of any bodily organ or function.”
 
 Id.
 
 (emphasis added). This lower threshold of proof was met by strong dissent. Justice McRae stated the following:
 

 Furthermore, despite the fact that the majority warns that this case should in no way “be construed as an attempt to prevent parents, teachers and other custodians involved in child care from properly disciplining their children[,]” I fear that it will do just that. Redefining “serious bodily injury” to include the risk of temporary disfigurement means that any parent who leaves a bruise or red spot on a child as the result of a well-deserved spanking is at risk of being found guilty of felony child abuse.
 

 Id.
 
 at 388 (¶ 45) (McRae, J., dissenting).
 

 ¶ 34. Despite the fears of the dissenting justices, the plurality majority opinion in
 
 Wolfe
 
 was adopted by a majority of the supreme court in
 
 Buffington,
 
 824 So.2d at 580 (¶ 15), which affirmatively overruled
 
 Yates.
 
 The supreme court held that the appropriate definition of serious bodily harm as used in the felony child-abuse statute is “bodily injury which creates a substantial risk of death, or permanent or temporary disfigurement, or impairment of any function of any bodily organ or function.”
 
 Id. Buffington
 
 is the controlling precedent on this issue in this state, and “[t]his Court, sitting as an intermediate appellate court, is bound by established precedent as set out by the Mississippi Supreme Court and we do not have the authority to overrule the decisions of that court.”
 
 Bevis v. Linkous Constr. Co.,
 
 856 So.2d 535, 541 (¶18) (Miss.Ct.App.2003) (citation omitted).
 

 
 *630
 
 ¶ 35. Henry’s argument on appeal is essentially the same argument as the dissenting justices in
 
 Wolfe.
 
 Henry claims there is no ascertainable standard to objectively determine whether one’s actions in spanking or bruising a child constitute misdemeanor or felony child abuse. However, because this argument was addressed by the dissenting justices in
 
 Wolfe,
 
 it is clear that the supreme court was fully aware of the argument when it issued its decision in
 
 Buffington
 
 to adopt the standard used by the plurality in
 
 Wolfe.
 

 ¶ 36. Henry concedes that the circuit court followed the law as set out by the supreme court in
 
 Buffington.
 
 Medical testimony at trial unequivocally proved that Jonathan’s severe bruising was a temporary disfigurement of a bodily organ. Henry submits that
 
 Buffington
 
 should be reversed because it is based on an unconstitutional interpretation of the phrase serious bodily harm; however, this Court lacks the authority to grant such relief.
 

 ¶ 37. THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT OF CONVICTION OF FELONY CHILD ABUSE AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITH FIVE YEARS OF POST-RELEASE SUPERVISION IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
 

 KING, C.J., LEE AND MYERS, P.JJ., IRVING, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . The names of the parties other than the defendant have been changed to protect the identity of the minor child.
 

 [2]
 

 . Henry and Sarah were married sometime following this incident.