805 So.2d 556 (2001)
Jonathan FULCHER a/k/a Jonathan M. Fulcher, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00741-COA.
Court of Appeals of Mississippi.
June 26, 2001.
Rehearing Denied September 18, 2001.
Certiorari Denied January 24, 2002.
*558 Leslie C. Gates, Meridian, Attorney for Appellant.
Office of the Attorney General by John R. Henry, Jr., Jackson, Attorney for Appellee.
EN BANC.

ON MOTION FOR REHEARING
MYERS, J., for the court:
¶ 1. The motion for rehearing is granted. The original opinion is withdrawn, and this opinion substituted.
¶ 2. A Lauderdale County Circuit Court jury found Jonathan Fulcher guilty of attempted robbery. Receiving habitual offender status, Fulcher was sentenced to life imprisonment without the possibility of parole. Fulcher appealed his conviction, presenting eight issues for our review:
I. DID THE INDICTMENT ADEQUATELY CHARGE ATTEMPTED SIMPLE ROBBERY?
II. SHOULD THE ISSUE OF ATTEMPTED SIMPLE ROBBERY HAVE BEEN SUBMITTED TO THE JURY?
III. DID THE JURY INSTRUCTIONS ADEQUATELY INSTRUCT THE JURY ON EVERY MATERIAL ELEMENT OF THE OFFENSE OF ATTEMPTED SIMPLE ROBBERY?
IV. DID THE TRIAL COURT ERR IN PERMITTING EVIDENCE OF UNCHARGED BAD ACTS AND FAILING TO GIVE LIMITING INSTRUCTIONS?
V. WAS THE DEFENDANT UNDULY PREJUDICED BY THE PROSECUTOR'S ACTIONS?
VI. DID THE TRIAL COURT ERR IN THE EXCLUSION OF EVIDENCE THAT THE VICTIM WORKED AT A "GAY BAR"?
VII. DID THE EVIDENCE PRESENTED SUPPORT THE ALLEGATION OF OWNERSHIP IN THE INDICTMENT, AND DID THE STATE PROVE BEYOND A REASONABLE DOUBT OWNERSHIP OF THE PROPERTY ALLEGED TO HAVE BEEN THE SUBJECT OF AN ATTEMPTED ROBBERY?
VIII. IS THE STATE BARRED FROM RE-PROSECUTION OF THE CHARGE OF ATTEMPTED SIMPLE ROBBERY WHERE THAT CHARGE WAS NOT SUFFICIENTLY PLED IN THE INDICTMENT AND THE DEFENDANT WAS EFFECTIVELY ACQUITTED OF THE TWO GREATER CHARGES OF ARMED ROBBERY AND SIMPLE ROBBERY?
Finding no error, we affirm.

FACTS
¶ 3. On January 18, 1998, William Greg Cooley was at a rest stop in Sandersville, Mississippi, urinating in the open. Cooley testified that there was no one present so he felt it not improper to relieve himself. During this process, Jonathan M. Fulcher drove up on his motorcycle. Fulcher asked Cooley for a flashlight. Cooley checked his vehicle, told Fulcher he did not have a flashlight and started to leave. Fulcher informed Cooley that he was a police officer off duty and was obligated to arrest Cooley for public urination. Fulcher is not a police officer. Fulcher frisked Cooley and expressed annoyance that he would have to wait at the rest stop for a police car to arrive. During the wait, Fulcher asked if Cooley worked at Bonita Lakes Mall at the Sunglass Hut. Cooley *559 responded that he did. Fulcher became angry and accused Cooley of having refused to assist him in a request for a special order of sunglasses.
¶ 4. After standing there for ten to fifteen minutes, Fulcher told Cooley he could relax. Fulcher then struck and kicked Cooley several times. Believing Fulcher to be a police officer, Cooley offered no defense. At some point, Cooley was knocked unconscious. When Cooley came to, he found Fulcher in possession of his keys and wallet. Asked by Fulcher how much money he had, Cooley responded that he had maybe $27. Fulcher then asked if he had a bank account and checks for the sum of $200. Fulcher also inquired to whom Cooley's vehicle was titled. Cooley responded that it was in his parents' names. Fulcher took and kept the money that was in Cooley's wallet.
¶ 5. Cooley tried to get away, but was caught by Fulcher, who stated, "[i]f I ever see you again, you're going to give me anything I want." Fulcher made Cooley repeat that statement and said that he would see him the next day.
¶ 6. Cooley departed in his vehicle and was followed by Fulcher who finally turned off at the Quitman exit. Cooley, who suffered black eyes, bleeding shins, bruises, and abrasions, drove to Rush Hospital in Meridian to visit a friend. The police were called from Rush Hospital.
¶ 7. On Monday, January 19, 1998, Cooley went to work at the Sunglass Hut, which is located in a kiosk in the Bonita Lakes Mall. After Cooley had worked for approximately an hour, Fulcher walked up to the kiosk and asked, "You remember me?" and "You remember what I told you? I told you that anything I want you're going to have to give it to me." Cooley proceeded to show Fulcher different sunglasses. Fulcher requested that he be shown the most expensive sunglasses. Cooley told Fulcher, "Don't do this. You are going to jail." Fulcher replied, "If you don't do what I tell you, I am going to put holes in you." Unhappy with Cooley's lack of enthusiasm Fulcher stated, "[Y]ou don't want to do it, do you?" Fulcher then opened his jacket and revealed a gun tucked in his pants. About this time, a mall employee recognized Fulcher and stopped to talk. After a quick conversation, this employee walked away. Shortly thereafter, Cooley started to hyperventilate and went to his knees gasping for breath. When other mall customers saw that Cooley was in distress and came to his aid, Fulcher walked away. Cooley was taken to the mall office, where he regained his breath and reported the attempted robbery.
¶ 8. Fulcher was indicted under Miss. Code Ann. §§ 97-3-79 (armed robbery), 97-3-73 (simple robbery), and 99-19-83 (habitual offender) (Rev.1994), for the incident at the Bonita Lakes Mall. The jury was instructed on armed robbery and attempted simple robbery. The jury found Fulcher guilty of attempted simple robbery. After a bifurcated hearing on the habitual portion of the indictment, the trial court sentenced Fulcher to life imprisonment without the possibility of parole.

ANALYSIS

I. DID THE INDICTMENT ADEQUATELY CHARGE ATTEMPTED SIMPLE ROBBERY?

II. SHOULD THE ISSUE OF ATTEMPTED SIMPLE ROBBERY HAVE BEEN SUBMITTED TO THE JURY?
¶ 9. Because these two issues are so closely intertwined, we shall address them together. Fulcher presents two principal arguments in making these two assignments of error. First, he claims *560 that the indictment did not set forth an overt act for the commission of attempted simple robbery, as is required when charging the attempt to commit any crime. Hawthorne v. State, 751 So.2d 1090, 1092 (¶ 13) (Miss.Ct.App.1999). Fulcher argues that while the indictment did allege an overt act toward the commission of armed robbery, namely, the exhibition of a deadly weapon, this allegation does not go toward satisfying the requirement of an overt act for the charge of attempted simple robbery. Fulcher does not challenge the adequacy of the indictment as it pertains to the charge of armed robbery.
¶ 10. The State counters that, because the indictment sufficiently charged Fulcher with the crime of armed robbery, the crime of attempted simple robbery was sufficiently charged as a lesser-included offense. We agree. The Mississippi Supreme Court has stated that "[a] lesser included offense by definition is one in which all its essential ingredients are contained in the offense for which the accused is indicted, but not all of the essential ingredients of the indicted offense." Payton v. State, 642 So.2d 1328, 1334 (Miss. 1994) (quoting Porter v. State, 616 So.2d 899, 909-910 (Miss.1993)).
¶ 11. In Mississippi, a person is guilty of armed robbery when they "feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon." Miss.Code Ann. § 97-3-79 (Rev. 1994). A person is guilty of simple robbery when they "feloniously take the personal property of another, in his presence or from his person and against his will, by violence to his person or by putting such person in fear of some immediate injury to his person." Miss.Code Ann. § 97-3-73 (Rev.1994). The courts of this state have held that simple robbery is a lesser-included offense of armed robbery. Williams v. State, 772 So.2d 1113, 1116(¶ 8) (Miss.Ct. App.2000); Gilmore v. State, 772 So.2d 1095, 1099(¶ 11) (Miss.Ct.App.2000); Gibby v. State, 744 So.2d 244, 244(¶ 1) (Miss. 1999). Therefore, it follows that attempted simple robbery is also a lesser-included offense of armed robbery. "The purpose of an indictment is to put the defendant on notice of the nature and cause of the charges against him." Richardson v. State, 769 So.2d 230, 233(¶ 4) (Miss.Ct.App. 2000). The charging of Fulcher with the crime of attempted simple robbery did not add any additional necessary elements to the prosecution's burden. We find that because the indictment sufficiently charged Fulcher with the crime of armed robbery, the crime of attempted simple robbery was sufficiently charged as an inferior offense. Miss.Code Ann. § 99-19-5 (Rev.2000).
¶ 12. Fulcher also argues that a constructive directed verdict was granted on the charge of simple robbery when the trial court failed to submit that charge to the jury because of insufficiency of the evidence. In doing so, Fulcher directs the attention of this Court to Harris v. State, 723 So.2d 546 (Miss.1997). In Harris, the defendant was indicted on three charges of deliberate design murder, but the trial court granted a directed verdict on these counts. Id. at 546. The State was then allowed to proceed against the defendant with charges of aggravated assault on the theory that aggravated assault was a lesser-included offense of deliberate design murder. Id. at 547. The defendant was subsequently convicted on three counts of aggravated assault. Id. at 546. The Mississippi Supreme Court held that where a trial judge grants a directed verdict on a charge listed in the indictment, that grant *561 acts as a directed verdict as to all lesser-included offenses of that charge unless the lesser offenses are pleaded in the indictment. Id. at 549.
¶ 13. We do not find Harris to be controlling in this matter, because "[c]rucial to that decision is the fact that, under our longstanding precedents, assault is not viewed as a lesser included offense to the crime of murder." Wolfe v. State, 743 So.2d 380, 387(¶ 37) (Miss.1999) (Banks, J., dissenting). "Clearly Harris did not nullify our statute which allows the jury to find guilt of any inferior offense `the commission of which is necessarily included in the offense with which he is charged....' Miss.Code Ann. § 99-19-5 (1994)." Id. While we agree that the failure of the trial court to submit the simple robbery charge to the jury amounted to a directed verdict on that issue, we find that the attempted simple robbery charge was still viable as an inferior offense to the armed robbery charge.

III. DID THE JURY INSTRUCTIONS ADEQUATELY INSTRUCT THE JURY ON EVERY MATERIAL ELEMENT OF THE OFFENSE OF ATTEMPTED SIMPLE ROBBERY?
¶ 14. Fulcher contests the sufficiency of the jury instruction on the charge of attempted robbery. This instruction reads, in pertinent part, as follows:
[S]hould you find from the evidence in this case, beyond a reasonable doubt:
1. On or about the 19th day of January, 1998, in Lauderdale County, Mississippi;
2. The Defendant, Jonathan Fulcher, did intend to wilfully and unlawfully attempt to take the personal property of the Sunglasses Hut, from the person or presence of William Craig Cooley, an employee, from his person or presence and against his will, by putting him in fear of bodily injury;
3. And, he made some direct but ineffective step toward the commission of this crime;
4. And, he failed to complete the crime, not because he simply decided to give up on the crime but, due to some other reason outside his control;
then it is your sworn duty to find the Defendant guilty of Attempted Robbery.
Should the State fail to prove any one or more of these essential elements beyond a reasonable doubt, then you shall find the Defendant not guilty of Attempted Robbery.
¶ 15. Fulcher asserts that this jury instruction was defective for three reasons. First, he contends that the instruction does not sufficiently address the necessary element of felonious intent. In support of this contention, Fulcher cites Johnson v. State, 744 So.2d 833 (Miss.Ct. App.1999), a case that he maintains is "dead on point." In Johnson, this Court analyzed a jury instruction on a charge of robbery which asked the jury to determine whether the defendant "wilfully took and carried away the property of" another person. Id. at 836(¶ 11). This Court found the instruction to be inadequate because it did not "imply the intent to permanently deprive since a taking may be wilful but lack altogether any intention to permanently retain the property." Id. at 837(¶ 13). However, we note that the defective jury instruction in Johnson made no reference to the word "unlawfully" as the challenged instruction in the case sub judice does. As the dissenting opinion in Johnson points out, the Mississippi Supreme Court has found the phrase "wilfully and unlawfully" to be an adequate substitute for the word "feloniously." Id. at 839(¶ 23) (Bridges, J., dissenting.) (citing *562 Finley v. State, 725 So.2d 226, 235 (Miss. 1998)). We find that the jury instruction properly addressed the element of felonious intent.
¶ 16. As a second challenge to this instruction, Fulcher argues that the instruction fatally omits the word "immediate" in regard to the victim's fear of "immediate bodily injury." Fulcher cites Webb v. State, 99 Miss. 545, 55 So. 356 (1911), in which the Mississippi Supreme Court held that an indictment on the charge of robbery was fatally defective for not having included an averment that the threat of danger to the victim was immediate. Id. However, Fulcher fails to cite, and we are unable to find, any case which states that the failure to include the word "immediate" in the jury instruction is fatal to the instruction. As the State points out, Miss.Code Ann. § 97-3-77 (Rev.1994) provides that the felonious taking of personal property by threatening injury to be inflicted at another point in time constitutes robbery. Fulcher also asserts that "the State has to prove the charge made by the indictment," again failing to cite any case law to support such an assertion. To find such a statement to be true would have the effect of prohibiting any jury from ever finding a defendant guilty of a lesser-included-offense. We see no reason to find that the omission of the word "immediate" from the jury instruction is fatal.
¶ 17. Lastly, Fulcher insists that the instruction omits the element of a definitive overt act. As quoted above, the challenged instruction charged the jury to find that the defendant "made some direct but ineffective step toward the commission [of the crime of robbery]." This language follows the law in Mississippi which provides that "an attempt to commit a crime consists of three elements: 1) an intent to commit a particular crime; 2) a direct ineffectual act done toward its commission; and 3) the failure to consummate its commission." Burney v. State, 515 So.2d 1154, 1158 (Miss.1987) (citations omitted). We find that the jury instruction sufficiently addressed the element of a definitive overt act. This issue is without merit.

IV. DID THE TRIAL COURT ERR IN PERMITTING EVIDENCE OF UNCHARGED BAD ACTS AND FAILING TO GIVE LIMITING INSTRUCTIONS?
¶ 18. In his next assignment of error, Fulcher contends that he was unfairly prejudiced when the State was allowed on cross-examination to question his wife about prior bad acts. Fulcher cites questions asked of his wife concerning a bad check that he had written, his prior impersonation of a police officer, and a time when Fulcher was unable for a long period of time to contribute to the family. We note from the outset of this discussion that "[t]he admissibility of evidence rests within the discretion of the trial court. However, the trial court's discretion must be exercised within the scope of the Mississippi Rules of Evidence, and reversal will be appropriate only when an abuse of discretion resulting in prejudice to the accused occurs." Armstrong v. State, 771 So.2d 988, 996(¶ 36) (Miss.Ct.App.2000) (citations omitted).
¶ 19. During the testimony of Fulcher's wife, the defense asked her questions tending to establish that her family was financially secure. It is clear that the intention of the defense in promulgating this line of questioning was to demonstrate that Fulcher had no motive to commit robbery. On cross-examination of Mrs. Fulcher, the State introduced evidence of a bad check written by the defendant several years earlier. In overruling the defense's objection to evidence of the bad check, the trial court stated that "the financial status *563 of the witness and the defendant is relevant. It's been inquired into on direct examination." We agree. Because the defense introduced evidence of the financial status of the defendant, the State was entitled to offer its own evidence in rebuttal. The admission of evidence concerning Mr. Fulcher writing a bad check did not constitute error.
¶ 20. Fulcher also challenges the admission of evidence concerning a prior incident where he impersonated a police officer. During the cross-examination of Mrs. Fulcher, the prosecutor asked her whether her husband had ever tried, in the time that they had been married, to convince someone that he was a police officer. Mrs. Fulcher replied that he had. The defense objected, stating that the question did not relate to the incidents giving rise to this case. Once it became clear to the trial court that the prosecution was not inquiring about the events surrounding this case, the court mandated that the questioning be limited to the relevant circumstances. When the trial court informed the prosecutor that he could not ask questions concerning the impersonation of a police officer unless he established a reasonable time frame for the occurrence, the prosecutor abandoned the subject. We do not find this to constitute an abuse of discretion on the part of the trial court.
¶ 21. The prosecution also questioned Mrs. Fulcher concerning circumstances that impeded her husband's ability to support the family for a period of time. When it became clear that the prosecutor was going to elicit testimony showing that the defendant had a prior conviction, the trial court held a conference outside the presence of the jury in which he prohibited the prosecution from mentioning the prior conviction. At no time was the defendant's prior conviction specifically mentioned before the jury. Fulcher now claims that the prior conviction was hinted at, and that although it was never specifically mentioned, "the prosecutor sure drove his point home with a sledge hammer." Because the prior conviction was never specifically mentioned, we find that there was no violation of Mississippi Rule of Evidence 404. This assignment of error is without merit.

V. WAS THE DEFENDANT UNDULY PREJUDICED BY THE PROSECUTOR'S ACTIONS?
¶ 22. During closing arguments, the prosecutor made several references to the defense attorney's "cheap courtroom theatrics" and other apparent shortcomings in his performance and his case-in-chief. The prosecutor also stated, in reference to the actions of the defendant, "I promise you it will happen again." Fulcher now claims that the prosecutor's behavior during his closing argument amounted to prosecutorial misconduct sufficient to justify reversal. The Mississippi Supreme Court has stated that:
Inappropriate or improper prosecutorial remarks are not necessarily reversible error. In Dunaway v. State, 551 So.2d 162 (Miss.1989), this Court noted:
As set forth in Craft v. State, 226 Miss. 426, 84 So.2d 531 (1956), the test to determine if an improper argument by a prosecutor requires reversal is whether the natural and probable effect of the prosecuting attorney's improper argument created unjust prejudice against the accused resulting in a decision influenced by prejudice. Dunaway, 551 So.2d at 163
Edwards v. State, 737 So.2d 275, 300 (¶ 56) (Miss.1999). Furthermore, "[a]bsent impermissible factors such as commenting on the defendant not testifying, a prosecuting attorney is entitled to great latitude in *564 framing the closing argument." Dunaway, 551 So.2d at 163.
¶ 23. The prosecutor did not cross the boundaries within which he was permitted by law to operate. Throughout his closing argument, he managed to "confine himself to the facts introduced in evidence and to the fair and reasonable deduction and conclusions to be drawn therefrom and to the application of the law, as given by the court, to the facts." Monk v. State, 532 So.2d 592, 601 (Miss.1988). When the trial court found the prosecutor's assertion that the defendant would again attack the victim to be inappropriate, the court quickly sustained the objection of defense counsel and instructed the jury to disregard the comment. The conduct of the prosecutor during his closing argument did not constitute prosecutorial misconduct sufficient to warrant reversal. This issue is therefore without merit.

VI. DID THE TRIAL COURT ERR IN THE EXCLUSION OF EVIDENCE THAT THE VICTIM WORKED AT A "GAY BAR"?
¶ 24. As his chief defense, Fulcher attempted to show that Cooley had fabricated charges of robbery because Fulcher had declined his sexual advances. While questioning Cooley, defense counsel asked him if he had grabbed Fulcher's crotch at the rest stop on the evening of January 18. Cooley responded that he did not. Defense counsel then questioned Cooley about his employment at a bar called "Crossroads." Cooley acknowledged that he was employed there at the time of the incident. Defense counsel then questioned Cooley about the bar being frequented by homosexuals, and the prosecutor objected to the question as irrelevant. The trial judge sustained the objection. Fulcher now claims that his defense was prejudiced because he was not allowed to question Cooley about working in the "gay bar."
¶ 25. We recognize a trial judge's vast discretion in matters concerning the relevancy and admissibility of evidence. Hill v. State, 774 So.2d 441, 444(¶ 10) (Miss. 2000). Unless the judge's decision constitutes an abuse of this discretion which results in prejudice to the accused, we will not reverse. Id. In the resolution of this issue, it is notable that defense counsel questioned Cooley extensively on two occasions about whether he had initiated the altercation at the rest stop by grabbing Fulcher's crotch. Cooley vehemently denied the accusation both times that he was asked. Other than asking about Cooley's employment at "Crossroads", defense counsel made no further inquiries as to Cooley's sexual orientation, though he was not specifically prohibited from doing so. If this were such a crucial issue to Fulcher's defense, it seems that an attempt to explore the subject further would have been undertaken. Under the circumstances, the judge did not abuse his discretion in sustaining the prosecutor's objection to the question concerning "Crossroads" being a "gay bar." This issue is without merit.

VII. DID THE EVIDENCE PRESENTED SUPPORT THE ALLEGATION OF OWNERSHIP IN THE INDICTMENT, AND DID THE STATE PROVE BEYOND A REASONABLE DOUBT OWNERSHIP OF THE PROPERTY ALLEGED TO HAVE BEEN THE SUBJECT OF AN ATTEMPTED ROBBERY?
¶ 26. Fulcher argues that the evidence presented at trial did not support the allegation of ownership that was alleged in the indictment. The indictment alleged that Fulcher took or attempted to take "the personal property of William Greg Cooley d/b/a Sunglass Hut," while *565 the jury instruction on attempted robbery instructed the jury to find Fulcher guilty if it found that he took "the personal property of the Sunglasses Hut, from the person or presence of William Craig Cooley, an employee." Fulcher contends that this discrepancy is fatal and requires reversal of his conviction.
¶ 27. The Mississippi Supreme Court has stated that "[a]n indictment charging robbery or larceny of property is properly laid in the party having possession, either as owner, bailee or agent." Bullock v. State, 391 So.2d 601, 609 (Miss.1980) (citing Mahfouz v. State, 303 So.2d 461 (Miss. 1974); Minneweather v. State, 55 So.2d 160 (Miss.1951)). That court has also addressed whether an indictment must perfectly reflect ownership. Cooper v. State, 639 So.2d 1320, 1323 (Miss.1994). In Cooper, a mother and her son were convicted of grand larceny after it was determined that they had removed flowers from the grave of a recently deceased woman. Id. at 1322. The indictment stated that the appellants had taken "the personal property of the Estate of Martha Benefield, deceased." Id. at 1323. The appellants argued that the "indictment was fatally flawed because it incorrectly named the Estate of Martha Benefield as the owner of the flowers, despite the fact that Johnny Benefield, the sole heir of Martha Benefield testified that he had not `set up' an estate for his mother." Id. In affirming the appellants' convictions, the Mississippi Supreme Court stated that:
[t]his Court and federal courts have addressed the effect of a variance between the evidence adduced by the government and the language of an indictment. With respect to a larceny indictment, this Court has stated:
The description of an indictment must be of sufficient particularity to enable the court to determine that such property is the subject of larceny and to advise the accused with reasonable certainty of the accusation he will be called upon to meet at the trial and to enable him to plead the judgment rendered thereat in bar of a subsequent prosecution for the same offense without other proof. Grimsley v. State, 215 Miss. 43, 48-49, 60 So.2d 509, 511 (1952). For the variance between the indictment and the proof to be fatal, however, it must be a material and prejudicial variance.

Jackson v. State, 450 So.2d 1081, 1082 (Miss.1984). See also United States v. Moree, 897 F.2d 1329 (5th Cir.1990) (variance which does not modify the offense charged is not error); United States v. Cochran, 697 F.2d 600 (5th Cir.1983); McCullum v. State, 487 So.2d 1335 (Miss.1986).
The strict rule of Johnson v. State, 186 Miss. 405, 191 So. 127 (1939), that ownership must be proven as averred beyond a reasonable doubt has already been implicitly overruled in cases such as Mahfouz v. State, 303 So.2d 461 (Miss.1974), and Bullock v. State, 391 So.2d 601 (Miss.1980). The rule from Jackson quoted above is now the proper focus of any inquiry regarding the adequacy of a larceny indictment.
Cooper, 639 So.2d at 1323. The court went on to say that:
By specifying the date, the property taken, and the location from which it was taken, the indictment was sufficient to put the Coopers on notice of the crime with which they were charged and to prevent subsequent prosecution for the same incident. There is no suggestion of any defense that could have been mounted against Johnny Benefield as the owner, rather than the estate of Martha Benefield, had the Coopers *566 known beforehand what the proof on ownership would show.
Id.
¶ 28. While Cooper specifically addressed the crime of grand larceny, we see no reason why it should not be applied to the facts of this case. The indictment against Fulcher was sufficient to put him on notice of the crime with which he was charged and to prevent subsequent prosecution for the same incident. Furthermore, there is no suggestion that any defense could have been mounted against the Sunglass Hut, be it a corporation, trade name, or whatever, had Fulcher known beforehand what the proof on ownership would show. This issue is without merit.

VIII. IS THE STATE BARRED FROM RE-PROSECUTION OF THE CHARGE OF ATTEMPTED SIMPLE ROBBERY WHERE THAT CHARGE WAS NOT SUFFICIENTLY PLED IN THE INDICTMENT AND THE DEFENDANT WAS EFFECTIVELY ACQUITTED OF THE TWO GREATER CHARGES OF ARMED ROBBERY AND SIMPLE ROBBERY?
¶ 29. Because all other issues presented in this appeal are without merit, there is no need to re-prosecute Fulcher on the charge of attempted simple robbery. Therefore, this issue is moot.
¶ 30. THE JUDGMENT OF THE LAUDERDALE COUNTY CIRCUIT COURT OF CONVICTION OF ATTEMPTED ROBBERY AS AN HABITUAL OFFENDER AND SENTENCE TO LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT THE POSSIBILITY OF PAROLE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO LAUDERDALE COUNTY.
PAYNE, BRIDGES, LEE, and CHANDLER, JJ., CONCUR. McMILLIN, C.J., CONCURS with separate written opinion joined by SOUTHWICK, P.J., PAYNE, and THOMAS, JJ., KING, P.J., DISSENTS with separate written opinion joined by IRVING, J.
McMILLIN, C.J., CONCURRING:
¶ 31. I concur in the result reached by the majority. However, I cannot agree that Harris v. State may be distinguished on the basis that aggravated assault is not a lesser included offense to deliberate design murder. Harris v. State, 723 So.2d 546 (Miss.1997). Whether assault is or is not a lesser included offense to murder, the Mississippi Supreme Court treated it as such in deciding Harris. In the concluding paragraph of the opinion, the court summed up its reasoning for reversing Harris's conviction as follows:
We therefore conclude that where the accusatory pleading fails separately to charge lesser included offenses, and the court grants a motion for directed verdict of acquittal, the judgment of acquittal on the charged offense includes acquittal on all uncharged lesser included felony offenses.
Harris, 723 So.2d at 549.
¶ 32. If we are to affirm Fulcher's conviction, as I believe we should, the rationale must be found elsewhere.

I.

Preliminary Comment on the Form of the Indictment
¶ 33. A preliminary discussion concerning some defects in the form of the indictment in this case would perhaps be helpful *567 in understanding my analysis. The indictment, in its caption, indicated an apparent intention to indict Fulcher for armed robbery and, if not that greater crime, then alternatively the lesser offense of attempted robbery. However, in the body of the document, the indictment charged armed robbery "and, if not this greater crime, then the lesser crime of Robbery, by taking or attempting to take personal property...."
¶ 34. This part of the indictment, intended as an alternative to the armed robbery charge, fails to properly charge either simple robbery or attempted simple robbery. As to simple robbery, the statute does not permit a conviction for merely "attempting to take" someone's personal property by force or threat of force. Rather, the statute on simple robbery requires the defendant to "feloniously take the personal property of another." Miss. Code Ann. § 97-3-73 (Rev.2000). This stands in marked contrast to the armed robbery statute, which permits conviction should the defendant "feloniously take or attempt to take [property] from the person...." Miss.Code Ann. § 97-3-79 (Rev. 2000) (emphasis supplied).
¶ 35. The indictment fails to explicitly charge attempted simple robbery because it lacks an allegation of an overt act toward the completion of the robbery or that completion of the crime was thwarted by something outside the defendant's control. Greenwood v. State, 744 So.2d 767(¶ 7) (Miss.1999).
¶ 36. For the foregoing reasons, I would ignore all language in the indictment beyond that which fairly charges the crime of armed robbery. Thus, the propriety of convicting Fulcher of attempted simple robbery must be determined as if he had been indicted solely for armed robbery.

II.

Discussion
¶ 37. Harris, despite the earlier quoted language that would appear to bear on our decision, is distinguishable for the reason that the trial court in this case did not direct a verdict of acquittal on the greater charge of armed robbery. Therefore, it was proper for the trial court to instruct as to those inferior offenses permitted by Section 99-19-5 of the Mississippi Code of 1972, which reads, in part, as follows:
On an indictment for any offense the jury may find the defendant guilty of the offense as charged, or of any attempt to commit the same offense, or may find him guilty of an inferior offense, or other offense, the commission of which is necessarily included in the offense with which he is charged in the indictment
. . .
Miss.Code Ann. § 99-19-5 (Rev.2000) (emphasis supplied).
¶ 38. The only real issue is whether the language of Section 99-19-5 regarding an "attempt to commit the same offense" must be read in the narrowest sense as confining the jury's consideration to an attempted armed robbery or whether the jury may also consider an attempted simple robbery. In view of the long-recognized proposition in the common law that a pleading alleging an offense also charged those lesser offenses, the elements of which were necessary to prove the greater, it would be my view that a reasonable reading of the phrase "offense as charged" would mean the named crime as well as any lesser included offenses. Miss.Code Ann. § 99-19-5 (Rev.2000). Therefore, the term "same offense" in the next succeeding phrase regarding attempts would likewise encompass the named crime and all lesser included offenses.
*568 ¶ 39. This view appears to be bolstered by the fact that an earlier version of this statute provided as follows:
Upon an indictment for any offence consisting of different degrees, the jury may find the accused not guilty of the offence in the degree charged in the indictment, and may find such accused person guilty of any degree of such offence, inferior to that charged in the indictment, or an attempt to commit such an offence.

§ 22 Hutchinson's Code of 1848.
¶ 40. This provision, in effect during the time our criminal statutes provided degrees of certain crimes, would have, for example, permitted a conviction for attempted second degree murder on a charge of first degree murder on an appropriate set of facts. The thrust of the amendment of this section to its present form appears to have been to eliminate any reference to degrees of crime since such degrees no longer exist in our criminal statutes. There is nothing in the amended version, however, that would indicate that its purpose was to tighten the jury's authority to consider an attempt to commit some lesser included offense charged in the indictment, whether separately pled or not.

III.

Concluding Observations
¶ 41. Though I find the foregoing a sufficient basis to affirm Fulcher's conviction, it would seem helpful to consider Fulcher's argument that the trial court's failure to instruct on simple robbery was the equivalent of a directed judgment of acquittal on that chargeand, thus, all offenses inferior to simple robbery.
¶ 42. Case law in other jurisdictions draws a distinction between (a) directing a verdict on a greater charge and (b) refusing to instruct the jury on a greater charge while yet permitting the jury to consider appropriate lesser included offenses. In State v. Vincent, 321 S.W.2d 439 (Mo.1959), the defendant was tried and convicted for second degree murder. He claimed on appeal that the evidence was insufficient to convict on murder because of a lack of evidence of premeditation. Because of the absence of such proof, he argued, the trial court erred in failing to direct a verdict of acquittal. Before finding that, in fact, the evidence was sufficient to convict of murder, the Missouri Supreme Court noted thateven if the evidence had been insufficient to convict of murder"[i]f the evidence was sufficient to make a submissible case of manslaughter, the motion for judgment of acquittal was properly overruled, since the offense of manslaughter was included in the charge of murder in the second degree." Id. at 441.
¶ 43. The United States District Court for the District of Columbia, in the case of United States v. Kelly, 119 F.Supp. 217 (D.D.C.1954), observed that, when considering a motion for directed verdict of acquittal,
[s]ince a conviction or acquittal for the offense alleged in an indictment is a bar to prosecution for a lesser offense upon which defendants could have been convicted as a part or incident of the crime charged [citation omitted], the Court must consider whether the evidence justifies a verdict of guilty not only as to the crime charged, but also as to lesser offenses that may be included in the crime.

United States v. Kelly, 119 F.Supp. at 219 (emphasis supplied).
¶ 44. These two cases stand for the proposition that, if the trial court should determine that the evidence is insufficient to convict of the greater crime, but nevertheless *569 feels that a jury question has been made on some lesser included offense, the defendant is not entitled to a complete acquittal. Rather, so long as the trial court does not actually grant the directed verdict of acquittal, the court may simply decline to instruct the jury on the greater crime while permitting it to consider any lesser included crimes (or attempts) for which there is support in the evidence.
¶ 45. Viewed in that light, Harris v. State can be seen as nothing more than a procedural failing on the trial court's part. Specifically, the court's error in Harris was in granting a directed verdict of acquittal when the proper course, from a procedural standpoint, would have been to deny the directed verdict motion, yet submit to the jury only those lesser included crimes for which there was sufficient evidence in the record to make a legitimate jury issue.
¶ 46. To read Harris as Fulcher has urged us to do would pose substantial legal and ethical dilemmas for trial courts in those instances where the court was convinced that the State's evidence of criminal activity was strong but was insufficient as to an essential element of the crime charged. The court, in that situation, would be faced with the choice of either (a) instructing the jury on the greater offense simply to preserve the jury's right to consider conviction of a lesser included offense even though the court knew that it could not permit a conviction of the greater crime to stand, or (b) directing a verdict for the defendant, thereby permitting him to escape any punishment at all for his seemingly unquestionable misdeeds. Neither course would appear an appropriate response to the situation. On the other hand, to allow the court to deny a directed verdict of acquittal on the greater crime in that situation, while permitting the jury to consider only those constituent offenses for which the proof was sufficient to convict, would seem an entirely reasonable and fair resolution of the difficulty. That procedure also has the salutary effect of permitting application of Section 99-19-5 in all appropriate cases and not just those where the State has made a jury case as to the principal charge in the indictment.
SOUTHWICK, P.J., PAYNE and THOMAS, JJ., join this separate written opinion.
KING, P.J., DISSENTING:
¶ 47. I respectfully dissent.
¶ 48. At Fulcher's trial, the jury was read instructions and given a choice of convicting Fulcher of either armed robbery or attempted simple robbery. Simple robbery was never given as an option.
¶ 49. Fulcher asserts that since the trial court refused to instruct the jury on simple robbery, its jury charge amounted to an implied or constructive directed verdict on that issue. Fulcher cites Reed v. State, 506 So.2d 277 (Miss.1987), to support this proposition. In Reed, the defendant was indicted for armed robbery against three victims. Id. at 278. During trial, the State failed to produce evidence as to the robbery of one of the individuals in the indictment. Id. Reed moved for a directed verdict and the motion was overruled, but the trial court allowed the State to reopen its case and delete this individual from the indictment and the jury instructions. Id. at 279. The Mississippi Supreme Court held that even though the judge did not specifically say that he was directing a verdict as to this action, it was tantamount to an acquittal on that charge. Id. at 280.
¶ 50. "[T]he trial judge's characterization of his own action cannot control the classification of this action." Id. (quoting United States v. Scott, 437 U.S. 82, 96, 98 *570 S.Ct. 2187, 57 L.Ed.2d 65 (1978)). "[A]n acquittal of a charge occurs when `the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.'" Id.
¶ 51. In the case sub judice, as in Reed, the trial judge determined that the State failed to produce evidence sufficient to allow the question of simple robbery to go to the jury. "That determination represents a resolution of one of the factual elements of the offense charged," specifically the robbery of Greg Cooley. Id. Under Scott and Reed, the decision of the trial judge not to instruct the jury on simple robbery amounted to an implied or constructive directed verdict as to that crime.
¶ 52. By failing to instruct the jury on simple robbery, the trial court, out of necessity, granted a constructive directed verdict on attempted simple robbery. Because the circuit court granted a directed verdict on simple robbery, the lesser-included-offense of attempted simple robbery should not have been submitted to the jury unless it was pled in the indictment.
¶ 53. This Court must therefore determine if the indictment returned against Fulcher adequately charged him with the crime of attempted simple robbery. The relevant language of that indictment is as follows:
did wilfully, unlawfully and feloniously take or attempt to take the personal property of William Greg Cooley d/b/a Sunglass Hut, consisting of two (2) pair of glasses and cash, from the person and presence of William Greg Cooley, against the person's will, by violence to said person by the exhibition of a deadly weapon, to wit: a handgun, putting the said William Greg Cooley in fear of immediate injury to said person, and, if not this greater crime, then the lesser crime of Robbery, by taking or attempting to take personal property, in the person's presence or from the person and against the person's will, by violence to said person or by putting said person in fear of some immediate injury to said person without the exhibition of a deadly weapon.
¶ 54. Fulcher moved to quash this indictment on a number of grounds, among them that the indictment was bad for failing to allege an overt act and felonious intention with respect to the simple robbery averment. An attempt to commit a crime consists of three elements: "(1) an intent to commit a particular crime; (2) a direct ineffectual act done toward its commission; and (3) the failure to consummate its commission." Greenwood v. State, 744 So.2d 767(¶ 7) (Miss.1999) (citations omitted). "When the charge is the attempt to commit a crime, an allegation of an overt act is `mandatory.'" Hawthorne v. State, 751 So.2d 1090(¶ 13) (Miss.Ct.App.1999) (citing Watson v. State, 483 So.2d 1326, 1328 (Miss.1986); Maxie v. State, 330 So.2d 277, 277-78 (Miss.1976)).
¶ 55. The indictment in Fulcher's case alleged the overt act to be exhibition of a deadly weapon. However that allegation goes only to the charge of armed robbery. It does not address the issue of simple robbery. "The rules of pleading may not be as technical as in previous judicial eras, but there are still basic obligations with which the State must comply regarding the information provided in an indictment." Hawthorne, 751 So.2d at 1093(¶ 13). The crime of attempted robbery consists of a direct ineffectual act an overt actto take personal property from a person against his will by violence or the threat of immediate injury, with the intention to take such property, and a failure to complete the commission of the *571 intended act. See generally Miss.Code Ann. § 97-3-73 (Rev.1994).
¶ 56. In the case sub judice, the indictment did not allege an overt act or violence from which criminality might be implied to effectuate simple robbery. The State failed to provide any concise and plain statement of the essential facts that would be alleged as an overt act with regard to simple robbery.
¶ 57. The indictment insufficiently alleged the lesser-included offense of attempted robbery, as it failed to allege the overt act. Therefore the question before this Court is whether the jury could still be instructed on the lesser offense, if a directed verdict had been granted on the primary offense.
¶ 58. Under Miss.Code Ann. § 99-19-5 (Rev.1994), the jury in a criminal trial may find an accused guilty of the offense charged, or of any attempt to commit the same offense, or may find him guilty of an inferior offense, or other offense, the commission of which is necessarily included in the offense of which he is charged. The State argues that this statute makes it clear that the indictment need not allege the crimes fitting these categories, that of necessity one charged with an offense also stands charged, as a matter of law, with all lesser constituent offenses as well.
¶ 59. What is clear from this statute is that the jury may find the defendant guilty of the offense as charged, or of any attempt to commit the same crime. In Fulcher's situation, the question is what happens if there is a court-directed verdict as to the principal offense, can the court thereafter instruct the jury on the lesser-included-offense which was not alleged in the indictment? The answer to that question is no.
¶ 60. In Harris v. State, 723 So.2d 546, 548-49 (Miss.1997), the Mississippi Supreme Court held that where a directed verdict is granted as to the principal offense, a lesser-included-offense, if not alleged in the indictment, may not go to the jury. "It is well-settled that a court-directed verdict to the jury to find the defendant not guilty has the same effect as a jury-deliberated verdict of not guilty." Id. at 547 (citing McGraw v. State, 688 So.2d 764, 767 (Miss.1997)). The court held that "[w]hen a trial court grants a defendant's motion for directed verdict, the trial court should not thereafter be permitted to alter or modify its apparently unqualified acquittal by permitting the State ... to charge necessarily included lesser offenses." Id. at 548. "If the State has made no other charges within the indictment, then the State is precluded from trying the defendant on a lesser included offense." Id. at 547.
¶ 61. For the foregoing reasons, I believe that Fulcher's conviction must be reversed.
IRVING, J., joins this opinion.