BARNES, J.,
for the Court:
¶ 1. A Warren County grand jury returned an indictment against Timothy Wilson and two other individuals, charging them with grand larceny of a truck, a trailer, and two lawn mowers, taken from Cook Tractor Company. After a jury trial, Wilson was found guilty as charged. The trial court sentenced Wilson as a habitual offender to ten years in the custody of the Mississippi Department of Corrections (MDOC) with five years suspended, five years to serve, and five years of post-release supervision. Wilson appeals, raising one issue: the sufficiency of the evidence. Finding no error, we affirm Wilson’s conviction and sentence.
STATEMENT OF THE FACTS AND PROCEDURAL HISTORY
¶ 2. On the morning of December 10, 2007, Adam Cook discovered property was stolen from his family’s tractor and lawn care equipment business, Cook Tractor Company, located in Vicksburg, Mississippi. Items stolen were a 2001 white Chevrolet Duramax truck, a sixteen-foot utility trailer, and two “zero-turn” lawn mowers. William Cook (Cook), Adam’s father and the business’s owner, valued the property at $1,600 for the trailer, $9,800 for one mower, and $4,500 for the other mower. Cook’s certificate of title for the truck was entered into evidence over the objection of the defense. Additionally, a document indicating what Cook’s insurance company paid him for the loss of his truck ($15,-269.38) was entered into evidence, again over the defense’s objection. Cook identified the missing property through photographs. The stolen property was recovered in March 2008.
¶ 3. At the business, all equipment of value is kept behind a six-foot tall chain-link fence topped with barbed wire, which surrounds the property. Chain-padlocked gates secure the front and back entrances. A security video of the property showed two individuals coming in the back gate at *1184 approximately 9:30 p.m. on December 9. Cook stated the individuals were of medium build. However, Cook could not identify them, as the utility light was off in three of the four camera views.
¶ 4. Adam is the store manager and in charge of security. He testified that when he came to work the morning of December 10, the back gate was wide open. The chain and padlock were still in place, but a pole had been cut off at the ground to open the gate. Also, someone had attempted to cut through the padlock. Adam immediately called his father about the theft and then called 911. Adam reviewed the security tapes that morning and found four of the seven outdoor surveillance camera recordings helpful for the investigation.
¶ 5. Derrick Curtis, a co-indictee who pleaded guilty to grand larceny,[1] testified as to the following events. On the morning of December 9, he and Michael Wood-house, another co-indictee, traveled from Utica to Wilson’s house in Vicksburg. That evening, after a few drinks, Wilson wanted to go for a ride with Curtis and Woodhouse. They took the vehicle of Wilson’s girlfriend. Curtis drove. They stopped at a Texaco gas station next to Cook’s business. Woodhouse and Wilson walked to Cook Tractor, leaving Curtis in the vehicle at the Texaco. Curtis claimed he became nervous when his friends did not return; so he called Wilson on his cell phone. Curtis decided to leave the Texaco and pulled the vehicle out on the roadway. Wilson and Woodhouse then “blew pas[t]” him in a white Chevy truck with a trailer behind it carrying “some lawn mower stuff.” Curtis determined “[t]his ain’t good .... it’s trouble.” Wilson drove the white truck to the house of Curtis’s father in Utica, where all three men met. Curtis called a friend, Howard Hill, to “fence” the stolen property. Hill, Curtis, and Wood-house then drove to the Mississippi Gulf Coast to sell the stolen equipment, while Wilson went home. Curtis testified the stolen property was sold for $3,000, of which Curtis received $500, Woodhouse $1,000, and Wilson $1,500. Curtis paid Woodhouse and Wilson their shares the following morning. Curtis maintained that it was Wilson’s idea to go to Cook Tractor.
¶ 6. The stolen property was recovered on the coast. Curtis and Woodhouse confessed to law enforcement about their involvement. Woodhouse told former investigator Jeff Crevitt (now a justice court judge) that he and Wilson went inside Cook’s fence and stole the truck. Crevitt was told Hill sold the truck, trailer, and two lawn mowers for $11,000. Crevitt found both Curtis’s and Woodhouse’s statements to be very reliable; their version of events matched the information discovered during the investigation.
¶ 7. Woodhouse also pleaded guilty to grand larceny.[2] He received no promises from the State in exchange for his plea and trial testimony. Woodhouse testified the Cook Tractor theft was Wilson’s idea. His version of the events was as follows. On December 9, Woodhouse and Curtis, who were riding around Utica, received a call from Wilson. They drove from Utica to Wilson’s house in Vicksburg. They all got *1185 into Wilson’s vehicle, with Curtis driving. They spoke of “that little old job” — that is, “going out to Cook’s place.” Just before they arrived, Wilson exited the vehicle and got a pair of bolt cutters. However, the chain and lock securing the back gate could not be cut; so they cut the hinges off the gate, and it opened. The surveillance video confirmed his testimony, and what was taken. Woodhouse helped Wilson hitch the trailer to the Chevy truck. They then loaded the two mowers onto the trailer and drove off in the Chevy truck. Curtis was waiting at the Texaco, and they waved for him to come along. They drove to the house of Wilson’s father in Utica and contacted Hill to sell the stolen equipment. They proceeded to the coast where Hill sold the items.
¶ 8. Wilson had an alibi witness, his fian-cée, Diane McNeil. She testified that December 8 was her birthday and that Wilson was at her birthday party at the time the theft occurred. However, on cross-examination, she admitted that she had refused to speak with the prosecutor and had never come forward to law enforcement concerning the alibi.
STANDARD OF REVIEW
¶ 9. Motions for a directed verdict and a JNOV both challenge the sufficiency of the evidence. Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005). “[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.” Id. (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). All credible evidence supporting the defendant’s guilt will be accepted as true, and the evidence will be considered in the light most favorable to the State. McClain v. State, 625 So.2d 774, 778 (Miss.1993).
ANALYSIS OF THE ISSUE
I. Sufficiency of the Evidence
¶ 10. Wilson argues that the evidence presented at his trial for grand larceny was not sufficient to support the guilty verdict. Grand larceny is defined as the “taking and carrying away, feloniously, the personal property of another, of the value of [$500.00] or more....” Miss.Code Ann. § 97-17-41(1) (Rev.2006).
¶ 11. Specifically, Wilson claims that the State did not meet its burden of proving conclusively who owned the stolen property because the proof of ownership offered by the State was not specific enough. Wilson argues it was unclear who the actual owner of Cook Tractor is; Cook only testified that he “owns a tractor and lawn care equipment” business, which sells commercial or residential tractors, lawn-care equipment, and trailers. It is a “family business” — two of Cook’s sons work at the store in Vicksburg, and his wife works at a store in Natchez. When specifically asked who owns the business, Cook stated: “At this time I don’t work, so I guess that means that my wife owns 50 percent of it.” He then agreed with his counsel’s statement that he is the sole owner and his wife owns an interest in the business.
¶ 12. Wilson also contends that the State did not establish that Cook Tractor owned the white Chevy truck, but that it was owned by Cook individually. Finally, Wilson claims the State never established that either Cook or Cook Tractor owned the lawn mowers. He maintains the proof at trial only offered multiple possible owners, and not a single owner as required by law.
¶ 13. In support of his argument, Wilson cites Bester v. State, 222 Miss. 706, 713, 77 So.2d 270, 273 (1955), for the rule that “in a prosecution for larceny the State *1186 must prove ownership of the stolen property as alleged in the indictment beyond a reasonable doubt.” However, the “strict rule” from Bester that Wilson relies upon, which was taken from Johnson v. State, 186 Miss. 405, 412, 191 So. 127, 129 (1939), has been “implicitly overruled” by several cases. Cooper v. State, 639 So.2d 1320, 1323 (Miss.1994) (citing Bullock v. State, 391 So.2d 601, 609 (Miss.1980); Mahfouz v. State, 303 So.2d 461, 462-63 (Miss.1974)).
¶ 14. The Mississippi Supreme Court has stated: “As a general rule of law in a prosecution for larceny, an allegation of the ownership of stolen goods is supported by proof of any legal interest or special property in the goods; for example, where the person or corporation named in the indictment is in lawful possession as a bailee or common carrier.” Mahfouz, 303 So.2d at 462-63 (emphasis added). Here, the indictment claims Wilson took the “personal property of Cook Tractor,” specifying the truck, trailer, and two lawn mowers. The State contends that the testimony and the exhibits provided at trial adequately prove ownership. We agree.
¶ 15. The Mississippi Supreme Court and this Court have applied the general rule from Mahfouz in two cases factually analogous to this one: Cooper and Fulcher v. State, 805 So.2d 556 (Miss.Ct.App.2001). In Cooper, the defendants argued that, in their grand-larceny conviction for taking flowers from the grave of a recently deceased person, precise ownership of the flowers was critical, and the variance between ownership in the indictment and ownership as proven at trial required reversal. Cooper, 639 So.2d at 1323. The defendants claimed the indictment was fatally flawed because it incorrectly named “the Estate of Martha Benefield, deceased” as owner of the flowers, even though the decedent’s sole heir had not set up the estate. The supreme court, citing Mahfouz as authority, held that the variance was “neither material nor prejudicial,” and affirmed the conviction. Id. at 1323, 1325. The indictment specified the date, the property, and the location where the property was taken; therefore, it was sufficient to put the defendants on notice of the crime charged. Further, there was no suggestion any defense could have been mounted against the sole heir rather than the Estate of Benefield, had the defendants “known beforehand what the proof on ownership would show.” Id. at 1323.
¶ 16. Similarly, in Fulcher, the defendant argued on appeal that the evidence presented at trial did not support the allegation of ownership in his indictment. Fulcher, 805 So.2d at 564 (¶ 26). The defendant, saying he was an off-duty police officer, accosted the victim, William Cooley, at a rest stop, where he beat Cooley unconscious and took twenty-seven dollars from his wallet. Id. at 558-59 (¶¶ 3-4). The next day, the defendant went to Cooley’s place of employment at the Sunglass Hut and, revealing a gun in his pants, requested Cooley show him expensive sunglasses and give him whatever he wanted. Id. at 559 (¶ 7). The ownership alleged in his indictment stated: “the personal property of William Greg Cooley d/b/a Sun-glass Hut.” Id. at 564 (¶ 26). The instruction on attempted robbery instructed the jury to find the defendant guilty if he took “the personal property of the Sunglasses Hut, from the person or presence of William Craig Cooley, an employee.” Id. at 565 (H 26). This Court, citing Mahfouz and finding Cooper analogous, held the evidence of ownership sufficient to support the defendant’s conviction. Id. at 565-66 (¶¶ 27-28). The defendant’s indictment had put him on notice of the crime charged and prevented subsequent prosecution for the same incident. “Furthermore, there [was] no suggestion that any defense could have been mounted against the Sunglass *1187 Hut, be it a corporation, trade name, or whatever, had [the defendant] known beforehand what the proof on ownership would show.” Id. at 566 (¶ 28).
¶ 17. Here, Adam testified that property was stolen from his family’s business. His father owns the business, and Adam is the store manager. Cook testified that he owned Cook Tractor and that his wife owned an interest in it. Adam and his father took an inventory of the property at the business to determine exactly what was stolen. Cook first noticed that his truck, which he had left inside the fence at his business over the weekend, was gone, and then he noticed the other missing equipment. Cook identified the missing property through photographs. Curtis and Woodhouse confessed to the theft and corroborated Cook’s testimony on the exact equipment stolen from Cook Tractor, which was sold on the coast.
¶ 18. At trial, a photograph of Cook’s truck was entered into evidence. The certificate of title for Cook’s truck was also entered into evidence, which showed “Wiliam S. Cook” owned the truck. Mahfouz states any legal interest in the property is sufficient to establish ownership in a prosecution for larceny. Mahfouz, 303 So.2d at 462-63. In this case, while Cook individually owned the truck, he had left it within the fence of the business over the weekend. Regardless of whether Cook or Cook Tractor had title ownership of the truck, Wilson did not have the right to take the truck. There was no defense that could have been mounted against Cook Tractor that could not have been mounted against Cook. Further, even if ownership of the truck was insufficiently proven, the remaining stolen equipment’s value (the $1,600 trailer, the $9,800 mower, and the $4,500 mower) totals well over $500, thereby proving the required elements of grand larceny without including the value of the truck. There was no testimony that the trailer or mowers were owned by anyone other than Cook Tractor.
¶ 19. We find the discrepancy in ownership of the truck by Cook rather than Cook Tractor “neither material nor prejudicial.” See Cooper, 639 So.2d at 1323. Accordingly, we affirm.
¶ 20. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT OF CONVICTION OF GRAND LARCENY AND SENTENCE AS A HABITUAL OFFENDER OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITHOUT THE ELIGIBILITY OF PAROLE OR PROBATION, WITH FIVE YEARS SUSPENDED AND FIVE YEARS OF POST-RELEASE SUPERVISION, AND TO PAY A FINE OF $2,500, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO WARREN COUNTY.
LEE, C.J., IRVING AND GRIFFIS, P.JJ., ISHEE, CARLTON, MAXWELL, RUSSELL AND FAIR, JJ., CONCUR. ROBERTS, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION, JOINED BY FAIR, J.; LEE, C.J., MAXWELL AND RUSSELL, JJ., JOIN IN PART.

. On the stand, Curtis explained his written agreement with the State, which was entered into evidence. He would enter a guilty plea for grand larceny and testify against Wilson. In return, the State would recommend Curtis be sentenced to ten years, with ten years suspended, five years of probation, and various fines. Curtis also had two other indictments pending on separate charges, which were not part of this agreement. He claimed he was not guilty of those charges.

. Woodhouse pleaded guilty to six other indictments on unrelated charges in which Wilson was not involved. In return, Woodhouse received a ten-year sentence.